Filed 4/26/16  In re A.S. CA2/4

Received for posting 4/27/16

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re A.S., A Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>A.S.,<br><br>  Defendant and Appellant. | B265591<br>(Los Angeles County<br>Super. Ct. No. PJ51606) |

APPEAL from an order of the Superior Court of Los Angeles County, Morton Rochman, Judge.  Affirmed.

Stephen Borgo, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Abtin Amir, Deputy Attorneys General, for Plaintiff and Respondent.

The juvenile court sustained a petition alleging that appellant A.S. made a criminal threat to his mother.  Appellant challenges the juvenile court's determinations regarding the petition.  We affirm.

## PROCEDURAL BACKGROUND

On June 15, 2015, a petition was filed under Welfare and Institutions Code section 602, alleging that appellant had made a criminal threat (Pen. Code, § 422).[1] Appellant denied the allegation.  On July 1, 2015, the juvenile court sustained the petition and determined the offense to be a misdemeanor.  Appellant was declared a ward of the court and placed in the custody of the probation officer.  The court directed that physical confinement not exceed one year.

## FACTS

A.  *Prosecution Evidence*

Vanessa L., appellant's mother, was the sole prosecution witness regarding the incident underlying the charge against appellant, which occurred on June 8, 2015.  In 2015, appellant was enrolled in the Devereux school in Texas, and Vanessa lived in North Hills.[2]  Appellant received a pass from his school permitting him to visit Vanessa from May 27 to June 3.  Early in the morning of June 3, appellant ran away from Vanessa's residence, but came back at some later time.

---

[1]  All further statutory citations are to the Penal Code.

[2]  The record discloses that in June 2014, appellant was assigned to residential placement in the Devereux school through the Los Angeles Unified School District.

2

Vanessa arranged with the Devereux school for appellant to return on June 8, but did not disclose that plan to him. On June 8, she asked appellant to accompany her to his godmother's house to move a bed. After providing appellant with a restaurant meal and ice cream, Vanessa drove toward an airport, where his flight was scheduled to leave at 2:00 p.m. Also accompanying Vanessa were her mother and four other children. Because appellant was in the vehicle's third row of seats, he could not leave the vehicle unless a second row seat was folded down.

As Vanessa approached the airport, appellant surmised their destination. Appellant began to cry, and was "very hurtful." He told Vanessa he could not believe she was taking him to the airport, and called her "a fucking bitch." He also said he was not getting on the airplane and he was not going back.

After parking near a terminal, Vanessa hailed some airport officers from her vehicle, and asked for their assistance in escorting appellant to his gate. Vanessa told the officers that she was afraid appellant would become "very aggressive" with her or flee the airport. The officers declined to help her.

After the officers walked away, Vanessa left the vehicle and pulled a seat down so that appellant could also get out. She said she would "go on the plane with him" and "it would be okay." Appellant initially refused to leave the car. He then kicked her fingers -- which were on the seat -- and said, "'Move so I can get out. I am going to get out. Just move already.'" Vanessa understood these remarks to mean that appellant intended to run away.

Once out of the vehicle, appellant pushed Vanessa, causing her to stumble. As he ran away, he turned toward Vanessa, called her "a fucking bitch" and said that he hated her. He further asserted that "when he got home, he was going to stab [Vanessa] for trying to put him on the plane." Appellant then fled in a direction leading away from the airport. According to Vanessa, his statement

made her "frightened," and she believed he would stab her when he returned home. She also thought it possible that he was "under the influence."

Vanessa contacted airport police and reported the incident. Two days later, on June 10, Vanessa discovered appellant in her residence when she awoke. Appellant soon left, but later returned while she was not at home. When Vanessa's mother told her appellant was in the residence, Vanessa again contacted the police. According to Vanessa, she was fearful for her safety because appellant appeared to be "under the influence" and not his "normal" self.

The next day, June 11, appellant told Vanessa by phone that he was "stuck in L.A." and needed transportation to her residence. Vanessa replied, "'No.'" Shortly afterward, during another phone conversation, she gave him permission to return to her residence. When Vanessa's mother told her appellant had arrived, Vanessa called the police, who arrested appellant.

B. *Defense Evidence*

Appellant denied threatening Vanessa when he left her vehicle at the airport on June 8, 2015. He acknowledged that from May 27 to June 8, while visiting Vanessa, he was using marijuana. Appellant testified that on June 8, he became upset when he realized that Vanessa had not been candid with him and that her actual destination was the airport. He further testified that after Vanessa's unsuccessful attempt to secure help from the airport officers, she opened the vehicle's door, moved a seat so he could get out, and said she would go on the airplane with him. When appellant said he would leave the vehicle if Vanessa stood in front of it, she agreed to do so. After Vanessa moved, appellant left the vehicle and ran away. According to appellant, he neither said anything nor looked at Vanessa as he fled.

4

## DISCUSSION

Appellant contends there is insufficient evidence to support the sustained petition for making a criminal threat. For the reasons explained below, we disagree.[3]

To prove the offense of making a criminal threat as defined in section 422, the prosecution is obliged to establish five elements: "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat . . . was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or

---

[3] Generally, "'[t]he proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]' [Citation.]" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

5

for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances. [Citation.]"[4] (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

Section 422 addresses "a specific and narrow class of communication," namely, "the expression of an intent to inflict serious evil . . . ." (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 863.) The statute thus targets "only those who try to instill fear in others," and "was not enacted to punish emotional outbursts . . . ." (*People v. Felix* (2001) 92 Cal.App.4th 905, 913.) Generally, "'[a] threat is sufficiently specific where it threatens death or great bodily injury. A threat is not insufficient simply because it does "'not communicate a time or precise manner of execution, [as] section 422 does not require those details to be expressed.' [Citation.]" [Citation.] In addition, section 422 does not require an intent to actually carry out the threatened crime. [Citation.] Instead, the defendant must intend for the victim to receive and understand the threat, and the threat must be such that it would cause a reasonable person to fear for his or her safety or the safety of his or her immediate family. [Citation.] 'While the statute does not require that the violator intend to cause death or serious bodily injury to the victim, not all serious injuries are suffered to the body. The knowing infliction of mental

---

4       Section 422 provides in pertinent part that a criminal threat is made by a person "who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, . . . is to be taken as a threat, even if there is no intent of actually carrying it out, [and] which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety."

terror is equally deserving of moral condemnation.' [Citation.]" (*People v. Wilson* (2010) 186 Cal.App.4th 789, 806 (*Wilson*).)

Here, appellant contends there is insufficient evidence to establish elements (3) and (4) of the offense. Regarding element (3), appellant maintains that his remark to Vanessa -- namely, that "when he got home, he was going to stab [her] for trying to put him on the plane" -- was not a true threat, arguing that the remark, viewed in context, was merely an emotional statement he had no intention of carrying out. In addition, he argues that the remark lacked the requisite immediacy, as he made it while running from Vanessa. Regarding (4), he argues that the remark failed to create "sustained fear" in Vanessa.

We begin with appellant's contention regarding element (3). The terms "'unequivocal,'" "'unconditional,'" "'immediate,'" and "'specific,'" as used in the statement of the element, do not impose unqualified requirements on threats actionable under section 422. (*People v. Bolin* (1989) 18 Cal.4th 297, 339-340.) As our Supreme Court has explained, "'unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim.'" (*Ibid.,* quoting *People v. Stanfield* (1995) 32 Cal.App.4th 1152, 1157.)

A threat may satisfy element (3) even though it occurred during an emotional encounter between parties with no history of violence toward each other. In *People v. Fierro* (2010) 180 Cal.App.4th 1342, 1345, the defendant first encountered his victim at a gasoline station, where both were attempting to fuel their cars. When the victim politely requested the defendant to move his car, which was blocking the victim's access to a pump, the defendant became enraged. (*Ibid*.) After insulting the victim, the defendant walked up to him, displayed a gun

7

tucked in his waistband, said, "'I should kill you. I will kill you,'" and added "'Right now.'" (*Id*. at pp. 1345-1346.) When the defendant said, "'Now get the fuck out of here,'" the frightened victim obeyed. (*Id*. at p. 1346.) Affirming the defendant's conviction for making a criminal threat, the appellate court concluded there was "more than substantial evidence" to establish element (3). (*Id*. at p. 1348.)

Furthermore, a threat may satisfy element (3) even though the threatener lacks the immediate ability to carry it out. In *In re David L.* (1991) 234 Cal.App.3d 1655, 1658, a student subjected a classmate to a continuous period of harassment. When the student pushed the classmate into a locker and tried to punch him, the classmate swung back, knocking the student to the ground. (*Ibid*.) The following day, the student phoned the classmate's friend to say he was going to shoot the classmate. (*Ibid*.) Upon learning of the threat, the classmate became fearful and believed his life was in danger. (*Ibid*.) In concluding there was sufficient evidence that the student had made a criminal threat, the appellate court rejected his contention that section 422 requires proof of "'imminent' conduct," stating that the statute "does not require the showing of an immediate ability to carry out the threat." (*Id*. at p. 1660; see also *Wilson*, *supra*, 186 Cal.App.4th at pp. 814-819 [defendant's threat to kill prison guard when freed from prison in 10 months satisfied element (3)]; *People v. Mosley* (2007) 155 Cal.App.4th 313, 316-322 [incarcerated defendant's threats to arrange for fellow gang members to follow jail guards home and kill them satisfied element (3)]; *People v. Gaut* (2002) 95 Cal.App.4th 1425, 1432 [defendant's threat to kill woman satisfied element (3), even though he made threat while in jail].)

We conclude there is sufficient evidence to establish element (3). Prior to making the threat, appellant kicked and pushed Vanessa, and then uttered a threat

8

clearly asserting an intent to stab her when he returned to her home, where he knew she would go after leaving the airport. This evidence is sufficient to establish that appellant's threat conveyed "a gravity of purpose and an immediate prospect of execution," for purposes of element (3) (§ 422).

Appellant's reliance on *In re Ricky T.* (2001) 87 Cal.App.4th 1132 is misplaced (*Ricky T.*). There, a student cursed at a teacher and said, "'I'm going to get you,'" after the teacher accidently hit him with a door while opening it. (*Id.* at p. 1135.) The appellate court concluded there was insufficient evidence that the remark satisfied element (3), as the remark itself was vague, it was unaccompanied by physical force, and there was no history of disagreements between the student and the teacher. (*Id.* at pp. 1137-1138.) In contrast, as explained above, appellant's remark was unequivocal, threatening serious harm, and was accompanied by physical force. His conduct thus demonstrated the seriousness of purpose and imminence of action required under element (3).

We turn to appellant's contention regarding element (4). As explained in *People v. Allen* (1995) 33 Cal.App.4th 1149, 1156, "sustained fear" means fear that exists for "a period of time that extends beyond what is momentary, fleeting, or transitory." In *Allen*, a mother was aware that the defendant had engaged in aggressive conduct against her daughter. (*Id.* at p. 1155.) The defendant then appeared at the mother's house, said he was going to kill her and her daughter, and pointed a gun at her. (*Id.* at pp. 1155-1156.) The mother felt fear because the defendant had previously come to her house. (*Id.* at p. 1156.) The defendant left the scene and was arrested about 15 minutes later. (*Ibid.*) The court in *Allen* concluded that "[f]ifteen minutes of fear of a defendant who is armed, mobile, and at large, and who has threatened to kill the victim and her daughter, is more than

9

sufficient to constitute 'sustained' fear for purposes of this element of [Penal Code] section 422." (*People v. Allen, supra*, at p. 1156, fn. omitted.)

Here, there is sufficient evidence that Vanessa experienced serious fear that was more than momentary, fleeting, or transitory. She testified appellant's threat made her "frightened," and she believed that he would stab her when he returned home. She also testified that after appellant fled, she waited for 45 minutes for airport police to respond to her phone call regarding the incident. When the airport police were unable to find appellant, she sought help from her local police station. Vanessa's testimony supports the inference that her state of fear lasted more than 15 minutes, and thus was not momentary, fleeting, or transitory.

*Ricky T.*, upon which appellant relies, is distinguishable. There, the appellate court concluded that the student's threat caused no sustained fear because the teacher responded to the threat simply by sending the student to the principal's office, and the police were not notified until the day after the incident. (*Ricky T.*, *supra*, 87 Cal.App.4th at pp. 1139-1140.) In contrast, Vanessa's conduct manifested sustained fear. In sum, there is sufficient evidence that appellant made a criminal threat to Vanessa.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

11