Filed 11/27/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D073763 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN302833) |
| DAVID MARK GAYNOR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard R. Monroy, Judge. Reversed and remanded with directions.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

A jury found David Mark Gaynor guilty of using the personal identification information of another (Pen. Code, § 530.5, subd. (a))[1] (counts 1, 4 and 7); forgery, possessing a completed check with the intent to defraud (§ 475, subd. (c) (count 2);[2] burglary (§ 459) (count 3); possession of a forged driver's license, (§ 470b) (counts 5 and 6); and failure to appear while on bail (§ 1320.5) (count 8).  In addition, the jury found true the allegation that Gaynor had a prior strike conviction (§§ 667, subds. (b)–(i), 668, 1170.12) and the trial court found true an allegation that Gaynor was on bail from another case at the time of the commission of count 8 (§ 12022.1, subd. (b)).

At sentencing, the trial court struck the prior strike in the interest of justice and sentenced Gaynor to a total term of five years and eight months in prison.  The court sentenced Gaynor to the upper term of three years on count 1, a consecutive eight-month term on count 8, and a two-year consecutive term for the on-bail enhancement.  The court also imposed concurrent two-year terms on counts 2, 4, and 7 and stayed execution of the sentences on counts 3, 5, and 6 pursuant to section 654.  The trial court imposed a restitution fine of $4,500 (§ 1202.4, subd. (b)) and a corresponding parole revocation restitution fine in the same amount (§ 1202.45).

---

[1]     Unless otherwise specified, all subsequent statutory references are to the Penal Code.

[2]     The jury's verdict referred to the crime as "Forgery – Possessing Completed Paper."

On appeal, Gaynor contends that the trial court erred in failing to stay execution of the sentences on three of the counts (counts 2, 4 and 7) pursuant to section 654 and also requests that we remand the matter to permit the trial court to reconsider the amount of the restitution fine and the corresponding parole revocation restitution fine, arguing that the court erred in imposing a restitution fine based on a count for which the execution of sentence is stayed pursuant to section 654.

The People concede that the trial court erred in failing to stay execution of the sentences on 4 and 7 pursuant to section 654, but contend that the trial court properly declined to apply section 654 with respect to count 2. With respect to the restitution fine, the People contend that no remand is required because Gaynor has not demonstrated any prejudice.

We accept the People's concession that the trial court erred in failing to stay execution of the sentences on counts 4 and 7 pursuant to section 654. We conclude that there is substantial evidence to support the trial court's implicit finding that section 654 does not apply with respect to count 2. Finally, we conclude that there is a reasonable probability that the trial court would have imposed a different restitution fine and corresponding parole revocation restitution fine if the court had properly stayed execution of the sentences on counts 4 and 7 pursuant to section 654. Accordingly, we reverse the judgment and remand the matter to the trial court with directions to stay execution of the sentences imposed on counts 4 and 7 pursuant to section 654 and to reconsider the restitution and parole revocation restitution fines.

3

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Topman Builders, Inc. did not assign a judgment against Ford Motor Company to Gaynor or William B.*

Topman Builders, Inc. (Topman) filed a small claims lawsuit against Ford Motor Company (Ford) in the early 2000s. Topman received a judgment against Ford (Ford Judgment) in the case, but never collected on the judgment or hired anyone to collect the judgment on its behalf. Although Topman never gave anyone authority to collect the Ford Judgment and Topman did not assign the judgment to anyone, court records indicated that the Ford Judgment had been assigned to a man named William B. However, William B. testified that he knew nothing about the acknowledgment of assignment of judgment that showed an assignment of the Ford Judgment to him.

B. *Gaynor obtains a check from Ford*

An attorney employed by Ford was authorized to pay the Ford Judgment. Based on the attorney's review of court records, the attorney believed that Topman had assigned the Ford Judgment to William B. The attorney spoke over the telephone with a person whom he believed to be William B. and arranged for Ford to draft a check payable to William B. in the amount of $6,428.08 (Ford Check) to satisfy the Ford Judgment. Ford sent the Ford Check to the attorney, who sent it to the person the attorney believed to be William B.

C.  *Gaynor attempts to cash a check from Ford made out to William B. at Chase Bank*

On February 24, 2012, Gaynor entered a Chase Bank and attempted to cash the Ford Check.  A teller asked Gaynor for identification.  Gaynor gave the teller a California driver's license in the name of William B. with Gaynor's photograph on it.  The teller thought that the driver's license appeared suspicious and asked Gaynor for another form of identification.  Gaynor then gave the teller a Visa credit card in the name of William B.  The teller conferred with a colleague and they called the police.  A police officer came to the bank and arrested Gaynor.

D.  *William B. did not know Gaynor*

William B. did not know Gaynor and Gaynor had no authority to conduct any business in William B.'s name.  William B. stated that a driver's license with his name, but with another person's photograph, address and signature, was not his.  William B. also stated that a falsified California identification card with his name on it, and a Visa credit card that was issued in his name, did not belong to him.

E.  *Gaynor failed to appear in court*

In January 2013, while out of custody on bail, Gaynor failed to appear in court despite being required to do so.

5

III.

DISCUSSION

A. *There is substantial evidence to support the trial court's implicit decision not to stay execution of the sentence on count 2 pursuant to section 654*

Gaynor claims that the trial court erred in failing to stay execution of his sentence on count 2, possessing a completed check with the intent to defraud (§ 475, subd. (c)), pursuant to section 654. Gaynor argues that the court erred in failing to stay the execution of the sentence on count 2 because his actions with respect to this count "were part of a single objective to cash the Ford [C]heck."

1. *Governing law and standard of review*

a. *Section 654*

Section 654 provides in relevant part: "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

"The purpose of the protection against multiple punishment is to [e]nsure that the defendant's punishment will be commensurate with his criminal liability." (*Neal v. State of California* (1960) 55 Cal.2d 11, 20 (*Neal*).) In *Neal*, the Supreme Court interpreted the statutory prohibition contained in section 654 to apply to cases in which a defendant engages in an indivisible course of conduct with a single objective that violates several different penal statutes. (See *Neal*, *supra*, 55 Cal.2d at p. 19.)

6

However, even if a course of conduct is " 'directed to one objective,' " it may " 'give rise to multiple violations and punishment' " if it is " 'divisible in time.' " (*People v. Deegan* (2016) 247 Cal.App.4th 532, 542, quoting *People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11 (*Beamon*).)  "This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken."  (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935 (*Gaio*).)

In reviewing the trial court's implicit finding that section 654 does not apply, we determine only whether there is substantial evidence to support the trial court's finding. (See *People v. Osband* (1996) 13 Cal.4th 622, 730–731.)

> b.  *Relevant substantive law*

Section 475, subdivision (c) provides:

> "Every person who possesses any completed check, money order, traveler's check, warrant or county order, whether real or fictitious, with the intent to utter or pass or facilitate the utterance or passage of the same, in order to defraud any person, is guilty of forgery."

The trial court instructed the jury pursuant to a modified version of CALCRIM No. 1932 with respect to this offense as follows:

> "The defendant is charged in count 2 with possessing a completed check with intent to defraud, in violation of . . . section 475[, subdivision] (c).  To prove the defendant is guilty of this crime, the people must prove that, one:  the defendant possessed a completed check; and two:  when the defendant possessed the document, he intended to pass the document in order to defraud.  Someone intends to defraud if he or she intends to deceive another person either to cause a loss of money, credit, or to cause damage to a legal, financial

7

or property right.  A person passes a document if he or she represents to someone that the document is genuine.  The representation may be by words or conduct and may be either direct or indirect.  It is not necessary that anyone actually be defrauded or actually suffer a financial, legal, or property loss as a result of the defendant's actions. The check may be real or false."

2.  *Factual and procedural background*

   a.  *The operative information*

The operative information charged Gaynor with one count of forgery (§ 475, subd. (c)), and alleged that he "unlawfully possess[ed] a completed check . . . with the intent to utter and pass . . . the same, in order to defraud a person, in violation of . . . section 475[, subdivision] (c)."  (Capitalization omitted.)

   b.  *Relevant trial proceedings*

The People presented evidence that Gaynor fraudulently obtained the Ford Check. The People also presented evidence that Gaynor attempted to cash the Ford Check at a Chase Bank.  In attempting to cash the check, Gaynor presented a Visa card and a driver's license containing certain personal identification information belonging to William B.

During closing argument, the prosecutor argued that count 1 (using the personal identification information of another) (§ 530.5, subd. (a)) was based on Gaynor's obtaining and using William's B.'s personal identification information on the Visa card. The prosecutor argued that count 2 (forgery, possessing a completed check with the intent to defraud) (§ 475, subd. (c)) was based on Gaynor's possessing the Ford Check with the intent to defraud.

8

c. *Sentencing proceedings*

i. *The parties' sentencing statements and the probation report*

In a section of the probation report entitled "PC 654 Issues," the report states as follows:

> "It appears the conduct in Count[ ] 1 (Use of Personal Identifying Information to Obtain a US Bank card) is separate and distinct from the remainder of the charges. However, Counts 2 and 3, (Possession of Completed Check and Burglary) refer to the same conduct: the defendant's attempt to steal the amount of the check when he entered Chase Bank. As to Counts 4, 5, and 6, Use of the Personal Identifying Information to obtain a False Driver's License and the Possession of a Forged License and ID Card, these counts also involve the same conduct, and therefore punishment must be stayed on two counts. As to Count 7, the defendant used the Personal Identifying Information to cash the Ford check which is separate[ ] and distinct conduct from the other counts. The defendant had the [personal identifying information] to present to Chase to accomplish the check cashing. Count 8 involves conduct subsequent to the underlying offense and is not subject to PC654 limitations."

The People filed a sentencing statement. In their statement, the People argued that Gaynor should receive consecutive sentences on counts 1, 2 , 4, and 8, and that section 654 did not apply with respect to these offenses. The People maintained that the offenses charged in counts 1, 2, 4, and 8 were "predominantly independent of each other" and occurred at different times.

Gaynor asserted that counts 1 through 7 were all committed with the same intent, i.e., to cash the Ford Check. He contended that counts 1, 4, 5, and 6 "were used as identification to cash the check," while counts 2, 3, and 7 were committed in the bank.

9

## ii. *The sentencing hearing*

The prosecutor argued that Gaynor's conduct consisted of three "separate incidents." The prosecutor described those incidents as: (1) efforts to obtain the Ford Check, (2) efforts to obtain the falsified identification documents, and (3) efforts to cash the Ford Check at the bank. The prosecutor requested that the court sentence Gaynor to the upper term on count 1 and "run each subsequent non-654-barred count at one-third the mid [consecutive]."

Gaynor responded by arguing that the offenses were not "three separate incidents," and that the objective of all of the crimes was the same—to "cash the check."

## iii. *The court's imposition of sentence*

As noted in part I, *ante*, the court sentenced Gaynor to the upper term of three years on count 1, imposed a concurrent term on count 2, imposed sentences on counts 3, 5 and 6, but stayed execution of those sentences under section 654, imposed concurrent terms on counts 4 and 7, and imposed a consecutive term of two years eight months on count 8 and the on-bail enhancement, for a total term of five years eight months.

With respect to count 2, the court implicitly rejected Gaynor's contention that section 654 applied, stating as follows:

> "Turning now to count 2, I do believe that the people have correctly argued the status of the law and that they're entitled to ask for those consecutive terms.

> "However, I do believe that the sentencing parameters, which the court ultimately will choose, are adequate to address the crime committed by [Gaynor], or the crimes, rather, and his prior criminality, which I do agree is getting very old.

10

"So as to count 2, the court will choose the midterm, but the court will run that concurrent with count 1. So there will be no additional time."

3. *Application*

There is substantial evidence from which the trial court could find that Gaynor possessed the Ford Check with the intent to use it fraudulently (count 2) prior to the time he entered Chase Bank and presented a Visa card in the name of William B. in an attempt to cash the check (count 1). Thus, there is evidence from which the trial court could have reasonably found that the crimes were temporally distinct in that, after obtaining the Ford check with the intent to defraud, Gaynor had time to reflect on his actions prior to attempting to cash the check. Accordingly, the trial court was not required to stay the execution of the sentence on count 2 pursuant to section 654. (See *Gaio*, *supra*, 81 Cal.App.4th at p. 935 [stating that, under section 654, temporally distinct crimes may be punished separately even where they share the same objective].)

Gaynor' arguments to the contrary are not persuasive. Gaynor argues that the "check fraud offense was not removed in time or place from the other offenses." In support of this contention, Gaynor suggests that count 2 alleged that he "fraudulently *used* a check (§ 475, subd. (c)) . . . ." (Italics added.) However, the operative statute (§ 475, subd. (c)), the operative information, and the trial court's jury instruction (CALCRIM No. 1932) all state that a defendant must *possess* the check with the *intent* to use it fraudulently. (See pts. III.A.1.b and III.A.2.a, *ante*.) Thus, Gaynor is incorrect to suggest that count 2 alleged his fraudulent *use* of a check.

11

Gaynor also argues that "temporal proximity of the offenses is not relevant, instead it is the common objective that controls the analysis." (Citing *People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*).) In *Harrison*, the court explained that section 654 had been extended to cases in which several offenses are committed during a course of conduct " 'deemed to be indivisible in time' " and that, "[i]t is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible." (*Harrison*, *supra*, 48 Cal.3d at p. 335, citing *In re Hayes* (1969) 70 Cal.2d 604, 609 (*Hayes*).) This statement from the *Harrison* decision means only that a defendant may be deemed to have *different* objectives even if the offenses are committed close in time. This is made clear by the *Harrison* court's citation to *Hayes*, in which the court stated, "Proximity in time between criminal events does not preclude multiple punishment." (*Hayes*, *supra*, 70 Cal.2d at p. 609.) In *People v. Jones* (2012) 54 Cal.4th 350 (*Jones*), the California Supreme Court overruled *Hayes* and clarified that where the punishment arises from a "single physical act," section 654 *does* bar multiple punishment. (*Jones*, *supra*, 54 Cal.4th at p. 355.) However, *Jones* does not support an application of section 654 in this case, since Gaynor does not contend that his commission of counts 1 and 2 arose from the same physical act. *Harrison* does not stand for the proposition that crimes that are committed at *different* times, thus affording the defendant the opportunity to reflect on his course of conduct, may not be punished separately. On that point, the law is clear that "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*Beamon*, *supra*, 8 Cal.3d at p. 639, fn. 11.)

Finally, Gaynor notes that the People cited case law, including *People v. Felix* (2001) 92 Cal.App.4th 905 (*Felix*), for the proposition that section 654 does not apply where a defendant has a "chance to reflect" on his actions. (*Felix*, *supra*, 92 Cal.App.4th at p. 915.) Gaynor contends that *Felix* is distinguishable from this case because in *Felix*, the Court of Appeal stated that "each offense created a new risk of harm" (*id.* at p. 915), while in this case, Gaynor's possession of the Ford Check with the intent to use it fraudulently purportedly did not create a new risk of harm. Even assuming for purposes of this opinion that offenses committed at distinct points in time may be punished separately only if they create "a new risk of harm," (*ibid.*) the trial court could have reasonably found that Gaynor's commission of count 2 (forgery by way of possession of a check with intent to defraud) (§ 475, subd. (c)) *did* create a risk of harm separate from the harm caused by the identity theft crime charged in count 1 (§ 530.5). (See *People v. Barba* (2012) 211 Cal.App.4th 214, 226 [observing that the forgery statutes (i.e., § 475, subd. (c)) are intended "to protect the *recipient* of the forged document from being defrauded," and the identity theft statutes (i.e., § 530.5) are intended to "protect the person or entity . . . whose personal information has been misappropriated and used for an unlawful purpose"].) Thus, the trial court could have found that, in possessing a check with the intent to defraud Chase Bank in count 2, Gaynor created a harm that was distinct from the harm that he created in using William B.'s identity in count 1.

Accordingly, we conclude that there is substantial evidence to support the trial court's implicit decision not to stay execution of sentence of count 2 pursuant to section 654.

B. *Gaynor is entitled to a remand so that the trial court may exercise its discretion in imposing a restitution fine and a parole revocation restitution fine that are not based on counts 4 or 7*

In part I, *ante*, we accepted the People's concession that the trial court erred in failing to stay execution of the sentences imposed on counts 4 and 7 pursuant to section 654.[3] Gaynor requests that we remand the matter to the trial court so that the court may exercise its discretion in imposing a restitution fine and a parole revocation restitution fine that are not based on counts 4 or 7.

1. *Governing law*

a. *Restitution fines*

In imposing a restitution fine, a trial court is required to apply the statute "in effect when [an] appellant committed his crimes." (*People v. Martinez* (2014) 226 Cal.App.4th 1169, 1190.) At the time of Gaynor's commission of the offenses charged in counts 1 through 7 in January and February 2012,[4] former section 1202.4, subdivision (b) provided in relevant part:

> "(1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred forty dollars ($240) starting on January 1, 2012, two hundred eighty dollars ($280) starting on January 1, 2013, and three hundred dollars ($300) starting on January 1, 2014, and not more than ten thousand dollars ($10,000) . . . .

---

3  Counts 1, 4, and 7 (using the personal identification information of another) (§ 530.5, subd. (a)) were all premised on Gaynor's use of William B.'s personal identification in attempting to cash the Ford Check.

4  The operative information alleged that counts 1–7 were committed between January 16, 2012 and February 24, 2012.

"(2) In setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine pursuant to paragraph (1) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted."[5]

At the time of Gaynor's commission of count 8 in January 2013,[6] the minimum restitution fine for a felony offense was $280.  (Former § 1202.4, subd. (b) [specifying minimum fine of "two hundred eighty dollars ($280) starting on January 1, 2013" per felony offense].)

Section 1202.45 provides in relevant part:

"(a) In every case where a person is convicted of a crime and his or her sentence includes a period of parole, the court shall, at the time of imposing the restitution fine pursuant to subdivision (b) of Section 1202.4, assess an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4."

b.   *Section 654 and restitution fines*

In *People v. Le* (2006) 136 Cal.App.4th 925 (*Le*), the Court of Appeal concluded "that the section 654 ban on multiple punishments is violated when the trial court considers a felony conviction for which the sentence should have been stayed pursuant to section 654 as part of the court's calculation of the restitution fine under the formula provided by section 1202.4, subdivision (b)(2)." (*Le*, *supra*, 136 Cal.App.4th at p. 934.)

---

5    All citations to former section 1202.4 are to the version of the statute enacted by Stats. 2011, ch. 358, § 1.

6    The operative information alleged that count 8 was committed sometime on or about January 13, 2013.

## 2. *Factual and procedural background*

The probation report recommended that the trial court impose a restitution fine (§ 1202.4, subd. (b))[7] in the amount of $12,000 and a corresponding parole revocation restitution fine (§ 1202.45) in the same amount. The probation report did not offer an explanation as to the basis for this amount, which exceeds the $10,000 maximum fine permitted under former section 1202.4, subd. (b).[8]

In his sentencing statement, Gaynor requested that the court decline to impose a restitution fine.[9]

At sentencing, the probation officer stated with respect to the restitution fine:

"Based on the term of five years, eight months, the restitution fine, pursuant to [section] 1202.4, will now be $4,500, and the same for [section 1202.45]."

Immediately thereafter, the trial court stated:

"Okay. So with those modifications, then, the restitution fine pursuant to [section] 1202.4[, subdivision] (b) in the amount of $4,500 will be ordered. The additional restitution fine pursuant to section 1202.45 in the amount of $4,500 to be stayed and remain so unless [Gaynor's] supervision is revoked."

---

[7] The probation report did not indicate whether it was referring to *former* section 1202.4. At the time of the March 2018 sentencing, the minimum restitution fine for a felony offense was $300. (§ 1202.4, subd. (b)(1).)

[8] Current section 1202.4, subdivision (b)(1) also specifies a maximum restitution fine for felony cases of $10,000.

[9] The People's sentencing statement did not discuss restitution fines.

16

3. *Application*

It is unclear from the record the precise manner by which the probation officer and the trial court calculated Gaynor's $ 4,500 restitution fine (§ 1202.4, subd. (b))[10] and the corresponding parole revocation restitution fine (§ 1202.45) in the same amount. However, given that, during the sentencing hearing, the probation officer referred to the length of Gaynor's prison sentence, it appears that the trial court may have been attempting to impose a restitution fine in accordance with the statutory formula specified in former section 1202.4, subdivision (b)(2) since "the number of years of imprisonment the defendant is ordered to serve" is one of the components of the statutory formula specified in former section 1202.4, subdivision (b)(2).[11] If so, it would have been improper for the court to have based its calculation on Gaynor's convictions on counts 4 or 7, since the trial court was required to stay the execution of the sentence imposed on those counts pursuant to section 654. (See *Le*, *supra*, 136 Cal.App.4th at p. 934.)

Further, if the trial court intended to employ the former section 1202.4, subdivision (b)(2) formula, the proper amount of Gaynor's fine would be $3,600, based on the minimum applicable fine in former section 1202.4, subdivision (b)(1) ($240),

---

[10]    It is unclear whether the trial court intended to impose a restitution fine based on *former* section 1202.4.

[11]    As noted in the text, it is unclear how the probation officer and the trial court calculated a restitution fine in the amount of $4,500. If the trial court had applied the statutory formula contained in former section 1202.4, subdivision (b) to counts 1, 2, 4, 7, and 8, the fine would have totaled $6,000.

17

multiplied by the number of years of imprisonment (five),[12] multiplied by the number of counts that Gaynor was convicted (counts 1, 2 and 8) apart from those for which execution should have been stayed pursuant to section 654 (three). Because it is reasonably probable that the court would have imposed a fine in an amount less than $4,500 if it had properly stayed execution of the sentences on counts 4 and 7 pursuant to section 654, Gaynor is entitled to a remand so that the court may consider whether to impose a different restitution fine (former § 1202.4, subd. (b)) and corresponding parole revocation restitution fine (§ 1202.45).[13]

Citing *People v. Sencion* (2012) 211 Cal.App.4th 480, 483 (*Sencion*), the People contend that, even assuming that the trial court based its restitution fines on counts for which it should have stayed the execution of sentence pursuant to section 654, no remand is required because the trial court's restitution fines were within the statutory range, and Gaynor thus purportedly suffered no prejudice from the trial court's calculation of his restitution fines.

In *Sencion*, a jury convicted a defendant of four offenses (counts 1–4). (*Sencion*, *supra*, 211 Cal.App.4th at p. 482.) The trial court stayed execution of the sentences on

[12]    In *Le*, the Court of Appeal indicated that in determining the " 'number of years of imprisonment the defendant is ordered to serve,' " for purposes of determining a restitution fine using the statutory formula in section 1202.4, subdivision (b)(2), a court is to "round" a sentence comprised of years and months, to the number of years. (*Le*, *supra*, 136 Cal.App.4th at pp. 932–933.)

[13]    We emphasize that on remand, the trial court is not *required* to impose a restitution fine and corresponding parole revocation restitution fine in an amount other than $4,500, since the statutory formula specified in former section 1202.4, subdivision (b)(2) is *discretionary*.

two of the offenses (counts 3 and 4), pursuant to section 654. (*Sencion*, *supra*, at p. 482.) Nevertheless, the trial court imposed restitution fines based on the stayed counts. (*Id.* at pp. 482–483.) Although the *Sencion* court concluded that the trial court erred in basing the restitution fines on the stayed counts, the court held that the defendant had suffered no prejudice from the error, reasoning as follows:

> "[I]t was error to base the restitution fines on counts 3 and 4 because those counts were stayed pursuant to section 654, subdivision (a). [Citations.] However, the section 1202.4, subdivision (b) restitution fines totaled only $1,100, an amount well within the statutory range of $200 to $10,000. Hence, there was no prejudice to defendant. (*People v. Schoeb* [(2005)] 132 Cal.App.4th [861,] 864–865 [(*Schoeb*)]; *People v. Enos* (2005) 128 Cal.App.4th 1046, 1049[(*Enos*)].)"

We respectfully disagree with this reasoning. The fact that the restitution fines that the trial court imposed in *Sencion* were within the authorized statutory range does not establish that the trial court *would not* have imposed a lower restitution fine but for the court's error in imposing restitution fines based on counts on which the sentences should have been stayed. (Cf. *Le*, *supra*, 136 Cal.App.4th at p. 935 ["We find it is reasonably probable that the trial court would have imposed a smaller restitution fine (and thus a smaller corresponding parole revocation fine) if trial counsel had objected both to the improper consecutive sentence and to the trial court's improper inclusion of the burglary conviction when the court calculated the restitution fine under the section 1202.4, subdivision (b)(2) formula"].)

Further, in our view, neither *Schoeb* nor *Enos* supports the *Sencion* court's conclusion. *Schoeb* and *Enos* involved cases in which a trial court imposed multiple

19

restitution fines in matters that were tried separately, but sentenced jointly. (*Enos*, *supra*, 128 Cal.App.4th at p. 1048; *Schoeb*, *supra*, 132 Cal.App.4th at p. 863.) It was under these unique circumstances that the *Enos* court stated that a defendant would suffer no prejudice from imposition of "separate fines that do not exceed the statutory maximum," in each separately tried case. (*Enos*, *supra*, at p. 1049.) The *Enos* court reasoned that this was because, even if a trial court was prohibited from imposing multiple restitution fines in such cases, "[a] trial court sentencing a defendant in consolidated cases would simply calculate the amount of the restitution fines as a whole instead of breaking them down separately for each case." (*Ibid.*) The *Enos* court further reasoned that since "the total fine would be the same, whether imposed in the aggregate or portioned and separately imposed in each case, there cannot be any prejudice to appellant." (*Id.* at p. 1050; see also *Schoeb*, *supra*, at p. 865 [citing *Enos*].) In other words, in *Enos* and *Schoeb*, the Court of Appeal reasoned that no remand was required in those cases because the record was clear that the *same* total amount of restitution fine would have been imposed, irrespective of whether the trial courts in those cases had imposed a single fine or instead, apportioned the amount into fines based on the separately tried cases. However, in a case such as Gaynor's, or as in *Sencion*, where the record reveals a reasonable probability that the trial court would have imposed a *lesser* fine but for its improper reliance on counts on which the sentences should have been stayed under section 654, we conclude that remand is proper.

Accordingly, we conclude that Gaynor is entitled to a remand so that the trial court may exercise its discretion in imposing a restitution fine (former § 1202.4, subd. (b)) and a parole revocation restitution fine (§ 1202.45) that are not based on counts 4 or 7.

## IV.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions to stay execution of the sentences imposed on counts 4 and 7 pursuant to section 654 and to reconsider the restitution (former § 1202.4, subd. (b)) and parole revocation restitution fine (§ 1202.45). In all other respects, the judgment is affirmed.

Upon the conclusion of proceedings in the trial court, the trial court shall forward a certified copy of the new abstract of judgment to the Department of Corrections and Rehabilitation.

AARON, J.

WE CONCUR:

HALLER, Acting P. J.

GUERRERO, J.

21