[No. B108177. Second Dist., Div. Seven. Feb. 11, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
BENNIE JAY TEAL, Defendant and Appellant.

## COUNSEL

William D. Farber, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Mary Sanchez and Karen Moran O'Keeffe, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS, J.**—A jury convicted appellant of threatening to kill Daniel Martinez (Pen. Code, § 422; count I; statutory references, unless otherwise noted, are to the Penal Code) and violating a restraining order (§ 166, subd. (a)(4); count II), a misdemeanor. The trial court, in a bifurcated proceeding, found true allegations appellant had four serious felony convictions, each a "strike" (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), and two state prison priors (§ 667.5, subd. (b)). Appellant was sentenced to state prison for 25 years to life.

Appellant contends: (1) there is insufficient evidence he knew the victim was present when he made the threats; (2) the trial court erred in admitting prejudicial evidence; and (3) the trial court erred in refusing to reduce the count I threat conviction. We find no error and affirm the judgment.

## Factual Background

The facts may be stated simply because the trial consisted of one witness's testimony, the victim's.

Mr. Martinez lived with his wife and daughters at 628 West 19th Street in San Pedro. Mrs. Martinez's niece, Carol Hammel, lived nearby on her boat with her boyfriend, appellant. Mr. Martinez first met appellant in 1994 when Carol Hammel brought him to a family gathering.

Appellant and Carol Hammel frequently argued and in 1995, Carol Hammel left appellant, took their infant daughter, and went into hiding.

After Carol Hammel went into hiding appellant repeatedly came to the Martinez residence demanding to see Carol and his daughter. Appellant was angry, aggressive, and intimidating. Mr. Martinez was frightened because he had no access to Carol Hammel, could not satisfy appellant, and appellant was angry and dangerous.

One day in July 1995, when Mr. Martinez came home from work, his wife was crying. She said appellant had been there an hour before, had showed her bullets, said he had a gun to use them, and had killed people.

On July 26, 1995, Mr. Martinez obtained a temporary restraining order against appellant.

After appellant had been served with the temporary restraining order he became more aggressive. On several occasions he ripped branches from the Martinez rose bushes and put them in the mailbox, or by the front door, or arranged them in a circle.

Appellant repeatedly telephoned the Martinez residence, so Mr. Martinez arranged "call-blocking." Appellant then used pay telephones.

On September 30, 1995, appellant telephoned and when he said "Danny?", Mr. Martinez hung up. But Mr. Martinez remembered that his 13-year-old daughter had just walked to the store and appellant, who frequently came to the house immediately after telephoning, might confront her. Mr. Martinez ran outside just as appellant drove up, parked, jumped out, and blocked the path of Mr. Martinez's returning daughter. Appellant was angry and told Mr. Martinez "You send the cops over to my house, you son of a bitch, you are going to pay the consequences."

Mr. Martinez signaled his daughter to go around back and she hopped over a brick wall and hid in their basement.

When Mr. Martinez's dog barked at appellant he leaned over the wrought iron fence and punched the dog. When the dog, after retreating, continued to bark, appellant told Mr. Martinez to stop the dog from barking or he'd kill the dog.

Before leaving, appellant said the "next time I see you, you better be armed." Mr. Martinez called the police but appellant had left before they arrived.

On another occasion, in September or early October 1995, the tires on Mr. Martinez's mini-van were slashed. The vehicle had been parked on the street and appellant knew it was Mr. Martinez's mini-van. No one saw who slashed the tires.

On Saturday, October 21, 1995, Mr. Martinez returned home about 4 p.m. and began assembling an exercise bike in the living room. Because appellant frequently came over on Saturdays, Mr. Martinez had his dog in the front yard and the front door open so he could hear appellant if he arrived.

When Mr. Martinez heard a car screech to a stop he went outside to investigate and saw appellant, extremely agitated, holding a beer bottle in one hand and something else, inside a paper bag, in the other. Mr. Martinez ran inside, locked the front door, called 9-1-1, and locked the other doors.

Mr. Martinez saw appellant hurdle the three-foot wrought iron fence, kick his dog and throw him across the yard, and then, using his shoulder as a battering ram, try to smash open the front door. The house shook as appellant rammed the door about five times.

When the door held, appellant removed his jacket, wrapped it around his fist and tried to smash open a front window. Appellant yelled "I'm going to kill you, you son of a bitch. When's the court date?" Appellant yelled this about three to five times. He also uttered primal screams, "Oww, Oww."

Mr. Martinez was terrified and believed appellant would kill him. Mr. Martinez recalled a videotape appellant had played at a family gathering in which he had introduced Charles Manson and said he, appellant, had stabbed five people. Mr. Martinez also remembered Carol Hammel had said appellant had a gun.

## DISCUSSION

1. *Appellant contends there is insufficient evidence he knew the victim was present when he made the threats.*

■ Appellant acknowledges that section 422 may be violated by a threat which is indirectly communicated to the threatened person (*In re David L.* (1991) 234 Cal.App.3d 1655, 1659 [286 Cal.Rptr. 398]; *People v. Kirkpatrick* (1994) 7 Cal.4th 988, 1015, fn. 6 [30 Cal.Rptr.2d 818, 874 P.2d 248]) but, nevertheless, argues "that under the circumstances of this case, proof of specific intent required the People to show, as part of its burden of proof as to appellant's intent, that appellant was aware of the presence of the threatened person, at the time the threats were made."

The argument is premised upon the absence of direct evidence appellant saw Mr. Martinez on October 21, 1995, or knew he was home that afternoon and could hear the threats. Appellant asserts the evidence shows no more than an angry catharsis, a ventilating monologue whose only purpose was emotional release not the conveying of a death threat to induce "sustained fear." (§ 422.)

We agree that section 422 is not violated by mere angry utterances or ranting soliloquies, however violent. One may, in private, curse one's enemies, pummel pillows, and shout revenge for real or imagined wrongs—safe from section 422 sanction.

But we disagree section 422 requires certainty by the threatener that his threat has been received by the threatened person. As with murder, if one shoots with the intent to kill, it is murder whether or not the shooter knows his bullet has hit its mark. So too, if one broadcasts a threat intending to induce sustained fear, section 422 is violated if the threat is received and induces sustained fear—whether or not the threatener knows his threat has hit its mark.

We need not decide whether there is substantial evidence appellant saw Mr. Martinez or knew he was home[1] because section 422 does not require such evidence. The section only requires a threat "with the specific intent that the statement . . . be taken as a threat . . . ." (§ 422.) As to that requirement the evidence was overwhelming and uncontradicted. Appellant repeatedly shouted "I'm going to kill you, you son of a bitch" while trying to batter down Mr. Martinez's front door and smash his front window.

The contention is without merit.

2., 3.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied March 9, 1998, and appellant's petition for review by the Supreme Court was denied May 13, 1998.

---

[1]Mr. Martinez testified he "went out" to investigate when he heard appellant's car screech to a stop. When he saw appellant hurdle the wrought iron fence appellant could presumably see him. Mr. Martinez also testified he saw rage in appellant's eyes—suggesting appellant could also see him. Additionally, being Saturday, Mr. Martinez was not at work and his dog was in the front yard.

*See footnote, *ante*, page 277.