112 Cal.Rptr.2d 311 (2001)
92 Cal.App.4th 905
The PEOPLE, Plaintiff and Respondent,
v.
Fernando FELIX, Defendant and Appellant.
No. B147530.
Court of Appeal, Second District, Division Six.
October 4, 2001.
Review Denied December 19, 2001.
*314 Murray A. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Marc E. Turchin, Acting Senior Assistant Attorney General, Jaime L. Fuster, Assistant Supervising Deputy Attorney General, and Michelle M. Paffile, Deputy Attorney General, for Plaintiff and Respondent.
GILBERT, P.J.
In a session with his psychotherapist, a patient makes threatening statements about his ex-girlfriend. Penal Code section 422[1] makes it a crime to threaten another with great bodily injury or death even when that threat is made to a third party with the intent that it be conveyed to the victim. Here we conclude, among other things, that the patient's statements do not constitute a violation of section 422 even though the third party psychotherapist has a duty to warn the intended victim. It must be shown that the patient intended the threatening remarks to be communicated to the victim.
Fernando Felix appeals his judgment after conviction of kidnapping (count 8; § 207, subd. (a)), making three terrorist threats (counts 5, 10 and 11; § 422), and leaving the scene of an accident (counts 6 and 7; Veh.Code, § 20001, subd. (a)). He was sentenced to state prison for eight years and four months. We reverse count 10, making a terrorist threat, but affirm all other counts.

FACTS

The kidnapping
Felix was the former boyfriend of Julia Luckhart. They previously lived together with her three-year-old daughter, Glenda. Luckhart obtained a restraining order preventing Felix from contacting her and going to Glenda's school.
Luckhart was at the Danbury School, carrying Glenda in a child's car seat. Felix grabbed the car seat from Luckhart and put Glenda in his car. Luckhart testified: "[Felix] said that he was tired of ... me trying to avoid him, so this is the only way that he can get to talk to me." She pleaded with him to give Glenda back, but he refused.
Luckhart got into Felix's car because she was afraid for her daughter's safety. Felix had her daughter and she "knew he wouldn't give her back if [she] didn't do what he asked...."
Luckhart reminded Felix of the restraining order, but he said it would not keep him away. He told her he wanted to renew their relationship. She agreed with what he was saying, solely to pacify him. She was afraid of what he might do if she disagreed. During a "half hour, 45 minutes" *315 drive, she made at least 12 requests to Felix to take her home. He refused and told her she had to listen to him. He made three stops and left the car for brief periods of time. But she could not run to safety because Glenda's car seat was too heavy and Felix was watching her. He eventually drove her home.

Threats on May 27
Luckhart and her fiancé, Jon Peel, were at Henry Valencia's house at 4:00 p.m., when Felix drove up and honked his horn. Peel ran towards him. Felix drove forward and hit Peel. Valencia threw a brick through the windshield. Felix said, "both of you are dead mother fuckers." Two hours later, Felix telephoned Luckhart and said, "I'm going to fucking kill you."

Felix's statements to jail psychologist
Psychologist Carl Levinger testified that on June 18, during a therapy session in jail, Felix said "he was thinking about how he was going to kill [Luckhart] once he was released from jail." Felix told Levinger that he had made a death threat to Luckhart before and told her, "I'm not threatening you, I'm making a promise." Levinger testified Felix said "that if he saw her with somebody else that he would shoot her and then the kids and then himself." Felix also said "one of his friends would kill her if he asked him to." Levinger telephoned Luckhart three days later. When the prosecution asked Levinger what he told her, the court sustained an objection on relevance grounds.
Luckhart testified that Levinger called her. But when the prosecution asked whether Levinger communicated threats to her, the court sustained an objection on hearsay grounds. Luckhart testified that after the call she went to her room, cried, and said, "Oh, my God, he's going to try to kill me."

DISCUSSION

I. Substantial evidence supports the conviction for kidnapping.
Felix contends the evidence was insufficient to support a conviction for kidnapping Luckhart. In deciding the sufficiency of the evidence, we determine whether "`after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]" (People v. Hatch (2000) 22 Cal.4th 260, 272, 92 Cal.Rptr.2d 80, 991 P.2d 165.) We resolve neither credibility issues nor evidentiary conflicts, we look for substantial evidence. (People v. Ochoa (1993) 6 Cal.4th 1199, 1206, 26 Cal.Rptr.2d 23, 864 P.2d 103.)
"Every person who forcibly, or by any other means of instilling fear ... takes ... any person ... into another part of the same county, is guilty of kidnapping." (§ 207, subd. (a); People v. Mayberry (1975) 15 Cal.3d 143, 153, 125 Cal.Rptr. 745, 542 P.2d 1337.) A defendant is guilty of kidnapping a parent where he or she takes the parent's child and the parent accompanies the defendant because of fear for the child's safety. (People v. La Salle (1980) 103 Cal.App.3d 139, 146-147, 162 Cal.Rptr. 816, overruled on other grounds in People v. Kimble (1988) 44 Cal.3d 480, 496, fn. 12, 244 Cal.Rptr. 148, 749 P.2d 803.) But "[i]f a defendant entertains a reasonable and bona fide belief that a prosecutrix voluntarily consented to accompany him," this shows a lack of intent to commit the crime. (People v. Mayberry, supra, at p. 155, 125 Cal.Rptr. 745, 542 P.2d 1337.)
Felix contends the evidence shows he believed Luckhart "voluntarily consented to accompany him." But he presented no evidence on this issue and Luckhart's *316 testimony undermines his claim. Felix took Luckhart's daughter to force her to go with him. He admitted using the child as a tactic to achieve that result. He violated the restraining order and said it would not keep him away. This shows Felix knew Luckhart would not voluntarily go with him. She got in his car because she feared for her daughter's safety. She requested, at least a dozen times, that Felix take her home. But he refused and insisted that she listen to him. Although he made three stops, Luckhart could not run away because she knew Felix was watching her. From these facts the jury could reasonably infer Felix was guilty of kidnapping. (People v. Galvan (1986) 187 Cal.App.3d 1205, 1214-1215, 232 Cal.Rptr. 410; People v. La Salle, supra, 103 Cal.App.3d at pp. 146-147, 162 Cal.Rptr. 816.)
Felix contends his motive was to renew their relationship. But "a person who forcibly carries and transports another ... against his or her will, is guilty of kidnapping `however good or innocent [the defendant's] motive or intent may otherwise be....'" (People v. Kelly (1990) 51 Cal.3d 931, 959, 275 Cal.Rptr. 160, 800 P.2d 516.)

II. The trial court did not have to instruct that a good faith belief that the victim consented was a defense.
Felix contends the court should have instructed that defendant's reasonable belief that the victim consented to accompany him is a defense to the crime. (People v. Mayberry, supra, 15 Cal.3d at pp. 153-158, 125 Cal.Rptr. 745, 542 P.2d 1337.)
The trial court has a sua sponte duty to instruct on defenses where there is substantial evidence to support the instruction. (People v. Breverman (1998) 19 Cal.4th 142, 157, 77 Cal.Rptr.2d 870, 960 P.2d 1094.) Because we have concluded there was no substantial evidence to show that Felix reasonably believed Luckhart consented to go with him, there was no error. But even if the court erred, it is not reasonably probable that Felix would have obtained a more favorable outcome had the error not occurred. (Id. at p. 178, 77 Cal.Rptr.2d 870, 960 P.2d 1094.) Evidence of Felix's guilt was overwhelming. Felix grabbed Glenda and told Luckhart he took the child to force her to accompany him. He ignored 12 requests to take her home. Luckhart's testimony was uncontradicted.

III. There was no substantial evidence that Felix made a terrorist threat against Luckhart to Levinger.
Felix contends that the statements he made about killing during his psychological therapy were not threats. He contends count 10 therefore must be reversed. We agree.
It is a crime to threaten another with death or great bodily harm. (In re David L. (1991) 234 Cal.App.3d 1655, 1657, 286 Cal.Rptr. 398; § 422.)[2] The crime requires "a threat so `unequivocal, unconditional, immediate, and specific' that it *317 conveys to the victim an `immediate prospect of execution.'" (In re David L., supra, at p. 1659, 286 Cal.Rptr. 398.) "[S]ection 422 is violated as well when such a threat is communicated by the threatener to a third party and by him conveyed to the victim...." (Id. at p. 1657, 286 Cal. Rptr. 398.) Section 422 therefore requires that the threatening statement be made with the specific intent to be taken as a threat.
Where a psychologist reasonably believes that a patient is dangerous to another person, he or she has a duty to warn the intended victim. (Tarasoff v. Regents of University of California (1976) 17 Cal.3d 425, 442, 131 Cal.Rptr. 14, 551 P.2d 334; Evid.Code, § 1024.) This is a narrow exception to the psychotherapistpatient privilege and the psychologist may be required to testify against the patient in a criminal trial. (People v. Wharton (1991) 53 Cal.3d 522, 563, 280 Cal.Rptr. 631, 809 P.2d 290 [defendant waived the privilege by placing his mental state in issue].)

Communication
Felix correctly contends that the prosecution had to prove that Levinger communicated his statements about killing to Luckhart. (In re David L., supra, 234 Cal.App.3d at p. 1657, 286 Cal.Rptr. 398.) It must establish "that the threat actually caused the person threatened `to be in sustained fear....'" (People v. Toledo (2001) 26 Cal.4th 221, 228, 109 Cal.Rptr.2d 315, 26 P.3d 1051, italics added.)
But inexplicably, the trial court sustained Felix's objections to the content of the telephone call between Levinger and Luckhart on hearsay and relevance grounds. The conversation between Levinger and Luckhart, not offered for the truth of the matter asserted, was not hearsay, and might have been highly relevant. It could have shown whether in fact Levinger related a threat to Luckhart. The trial judge could have determined the relevance of this disputed preliminary fact by way of an Evidence Code section 402 hearing where Levinger could have testified out of the presence of the jury, about what he said to Luckhart. (People v. Alcala (1992) 4 Cal.4th 742, 774, 15 Cal.Rptr.2d 432, 842 P.2d 1192.) If Levinger had merely told Luckhart that Felix was dangerous and that she should be careful, the objection should have been sustained. Levinger testified he called Luckhart, she testified she talked to him, but neither of them testified about what Levinger said. Therefore there was no evidence that Levinger told Luckhart the content of Felix's statements.
The Attorney General states that after the call Luckhart said, "Oh, my God, he's going to try to kill me." He contends it can be inferred that Levinger must have told her what Felix said. But there must be evidence to support an inference and the prosecution may not fill an evidentiary gap with speculation. (People v. Godwin (1996) 50 Cal.App.4th 1562, 1573, 58 Cal.Rptr.2d 545; People v. Bledsoe (1946) 75 Cal.App.2d 862, 864-865, 171 P.2d 950; 3 Witkin, Cal. Evidence (4th ed. 2000) Presentation, § 141, p. 202.) A therapist is not required to disclose the patient's statements when giving a Tarasoff warning. (Menendez v. Superior Court (1992) 3 Cal.4th 435, 451, 11 Cal.Rptr.2d 92, 834 P.2d 786.) Levinger could have achieved the same reaction from Luckhart, without mentioning Felix's statements, by simply warning her that Felix was dangerous. (People v. Wharton, supra, 53 Cal.3d at p. 562, 280 Cal.Rptr. 631, 809 P.2d 290 [psychiatrist's warning did not reveal patient's remarks but only told the victim, "`... [y]ou're in a very dangerous situation. I think you should get out....'"].) *318 Luckhart's statements might have been prompted by the threats made on May 27.
The Attorney General's reliance on In re David L. is misplaced because there the prosecution proved that the third party informed the victim of the defendant's remarks. (In re David L., supra, 234 Cal. App.3d at p. 1658, 286 Cal.Rptr. 398.) That is not the case here. But even if it were, the prosecution still had to prove another element.

Intent
Felix contends that he did not intend his statements to Levinger to be threats, they were only statements made as part of his therapy. Section 422 was not enacted to punish emotional outbursts, it targets only those who try to instill fear in others. (In re Ricky T. (2001) 87 Cal. App.4th 1132, 1141, 105 Cal.Rptr.2d 165.) "One may, in private, curse one's enemies, pummel pillows, and shout revenge for real or imagined wrongs-safe from section 422 sanction." (People v. Teal (1998) 61 Cal. App.4th 277, 281, 71 Cal.Rptr.2d 644.)
Levinger objected to testifying because Felix was his patient and Felix objected contending that his communications were privileged. The prosecution conceded that Felix's statements were made during a therapy session, but successfully argued they were admissible under Tarasoff.
The Attorney General contends Felix "intended for the threat to be communicated to Luckhart, as it was understandable for appellant to believe Dr. Levinger would warn Luckhart...." But there is no evidence Felix knew about Tarasoff. Moreover, there was no evidence that Felix knew Levinger would disclose his statements to Luckhart or that he wanted them to be revealed. He only told Levinger Luckhart's first name. There is nothing in the record showing that Levinger told Felix that he would contact her. "Where the threat is conveyed through a third party intermediary, the specific intent element of the statute is implicated. Thus, if the threatener intended the threat to be taken seriously by the victim, he must necessarily have intended it to be conveyed." (In re David L, supra, 234 Cal.App.3d at p. 1659, 286 Cal.Rptr. 398.) In In re David L., the defendant knew that the third party would convey the threat to the victim because the victim and the third party were friends. But here there was no such evidence. On the other hand, if Felix had said to Levinger, "you can tell Luckhart that I am going to kill her," he would undoubtedly be in violation of section 422.
Moreover, in evaluating intent, the setting in which the defendant makes the remarks must be considered. "When determining whether an alleged threat falls outside the realm of protected speech, it is important to focus on the context of the expression." (U.S. v. Bellrichard (8th Cir.1993) 994 F.2d 1318, 1321; see also U.S. v. Hoffman (7th Cir.1986) 806 F.2d 703, 704; Watts v. U.S. (1969) 394 U.S. 705, 706, 89 S.Ct. 1399, 22 L.Ed.2d 664.)
Similarly, "[s]ection 422 demands that the purported threat be examined `on its face and under the circumstances in which it was made.'" (In re Ricky T., supra, 87 Cal.App.4th 1132,1137, 105 Cal.Rptr.2d 165.) Felix made his remarks while discussing highly personal thoughts about homicide, suicide, and his emotions for Luckhart. He made them in a setting where the patient has an expectation of confidentiality. (Evid.Code, § 1014; Scull v. Superior Court (1988) 206 Cal.App.3d 784, 788, 254 Cal.Rptr. 24.) "[A] psychotherapist's capacity to provide effective treatment requires that a patient "`... bare his entire self, his dreams, his fantasies, his sins and his shame...."'" *319 (Scull, supra, at p. 789, 254 Cal.Rptr. 24.) "[S]ection 422 is not violated by mere angry utterances or ranting soliloquies, however violent." (People v. Teal, supra, 61 Cal.App.4th at p. 281, 71 Cal.Rptr.2d 644.) Where the patient fantasizes about killing in private, this is not an offense under section 422. (Ibid.; U.S. v. Alkhabaz (6th Cir.1997) 104 F.3d 1492, 1496 [defendant's act of e-mailing a friend fantasies about torturing and killing another student was insufficient to support indictment for transmitting interstate threats].)
The Attorney General notes that Levinger gave a Tarasoff warning and Felix used threatening language. But the warning only shows that Levinger thought Felix might be dangerous and the prosecution may not prove the offense by simply relying on Felix's words. (Menendez v. Superior Court, supra, 3 Cal.4th at p. 451, 11 Cal.Rptr.2d 92, 834 P.2d 786; In re Ricky T, supra, 87 Cal.App.4th at p. 1137, 105 Cal.Rptr.2d 165; compare U.S. v. Glass (10th Cir.1998) 133 F.3d 1356, 1359.) It must also prove he specifically intended those words to be threats. (People v. Teal, supra, 61 Cal.App.4th at p. 281, 71 Cal.Rptr.2d 644; In re David L., supra, 234 Cal.App.3d at p. 1659, 286 Cal.Rptr. 398.)
The prosecution showed that Felix made his remarks 45 minutes into his therapy session. But it produced no evidence about what preceded them, why he made them, whether they were in response to therapy, or what Felix wanted Levinger to do about them. There is no evidence that Levinger advised Felix about "`the relevant limitations on confidentiality'" of the session, or that Felix knew about them. (U.S. v. Hayes (6th Cir.2000) 227 F.3d 578, 586.)
"[T]he open and confidential character of psychotherapeutic dialogue encourages patients to express threats of violence...." (Tarasoff v. Regents of University of California, supra, 17 Cal.3d at p. 441, 131 Cal.Rptr. 14, 551 P.2d 334.) Psychoanalysts often try to probe deeply into the psyche to measure stress and the origins of aberrations. (Edwards v. Superior Court (1976) 16 Cal.3d 905, 911, 130 Cal.Rptr. 14, 549 P.2d 846.) But there was no testimony regarding the scope of this session. There was no evidence as to whether anything Levinger did brought these remarks out or whether they were purely voluntary. Because the prosecution did not adequately prove the factual setting involving Felix's remarks, it did not show whether his words were the product of therapy, ranting soliloquies, or a crime. The prosecution must prove sufficient facts to show that the defendant's words fell squarely within section 422. (In re Ricky T., supra, 87 Cal.App.4th at p. 1139, 105 Cal.Rptr.2d 165.) It did not do that.
Moreover, to apply the Attorney General's position here would mean that those who need therapy for their homicidal thoughts would not seek it. (Scull v. Superior Court, supra, 206 Cal.App.3d at p. 788, 254 Cal.Rptr. 24.) They could view the jail psychologist as a police agent and the therapy session as self-incrimination. (Estelle v. Smith (1981) 451 U.S. 454, 461-462, 101 S.Ct. 1866, 68 L.Ed.2d 359.) Instead of exposing their thoughts for treatment they might repress them and act on them. Such a result would not further the interests of victims, psychotherapy, or the criminal justice system.
We conclude the evidence was insufficient to support the conviction on count 10.

IV. Section 654
Felix contends that the two threats on May 27 (counts 5 and 11) were improperly prosecuted and punished as separate crimes. He states that under section 654 they were part of an indivisible course of conduct.
*320 The trial court imposed an eight-month consecutive sentence for each of these two terrorist threat convictions. (§ 422.) "[S]ection 654 prohibits multiple punishment for an indivisible course of conduct...." (People v. Chacon (1995) 37 Cal.App.4th 52, 65, 43 Cal.Rptr.2d 434.) But multiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense created a new risk of harm. (People v. Massie (1967) 66 Cal.2d 899, 908, 59 Cal. Rptr. 733, 428 P.2d 869; People v. Kwok (1998) 63 Cal.App.4th 1236, 1253-1256, 75 Cal.Rptr.2d 40.) "Separate sentencing is permitted for offenses that are divisible in time...." (People v. Kwok, supra, at p. 1254, 75 Cal.Rptr.2d 40.)
The trial court could reasonably infer that each threat was a separate crime. They were not connected because Felix made them at different times at different places. Although Felix made two threats on May 27, the first was directed at two victims, the second was exclusively against Luckhart. Felix contends these crimes were part of a pattern of anger against Luckhart. But Felix had time to reflect before making the second threat. The trial court could reasonably infer that because of his anger he intended the second threat to cause new emotional harm to Luckhart. Felix has not shown error.
The judgment is reversed as to count 10. In all other respects the judgment is affirmed.
We concur: YEGAN, J., and COFFEE,
NOTES
[1] All statutory references are to the Penal Code unless otherwise stated.
[2] Section 422 provides in relevant part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement ... is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."