Filed 1/25/21  P. v. Castorena CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D076918 |
| Plaintiff and Respondent, | (Super. Ct. No. JCF002596) |
| v. | |
| ROBERTO CASTORENA, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Imperial County, Marco D. Nunez, Judge.  Reversed.


Charles R. Khoury, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

Roberto Castorena suffers from mental illness.  One day he sent numerous text messages to his mother R.G. (Mother) threatening to kill Jane

Doe, his college academic advisor, and two peace officers. When Mother indicated she would give the text messages to the police, Castorena replied, "Do it." Law enforcement immediately detained Castorena and later informed Doe of his threat. A jury convicted Castorena of making a criminal threat (Pen. Code, § 422) against Doe.[1] The trial court denied probation and sentenced Castorena to prison for 16 months.[2] Castorena asserts the evidence fails to show he intended that his threat be conveyed to Doe. We agree and reverse the judgment.[3]

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     After serving his sentence, Castorena was diagnosed with schizophrenia and admitted to the Department of State Hospitals as a condition of his parole as a mentally disordered offender (see § 2960 et seq.) under section 2962.

[3]     Castorena also filed a petition for writ of habeas corpus arguing that his trial counsel provided ineffective assistance by failing to request funds for a psychiatric evaluation to determine if he qualified for pretrial mental health diversion. (§ 1001.36, subd. (a).) By separate order, we dismiss the petition as moot.
        On the day of oral argument Castorena filed a request for an order to the Superior Court of Imperial County, Evidence Room to transmit People's Exhibit 2, audio/video recording of law enforcement interview with the defendant DVD to this court. This request is denied. Castorena also moved to file numerous medical records pertaining to his petition for writ of habeas corpus. Because we are dismissing the petition as moot, the motion is denied.

FACTUAL AND PROCEDURAL BACKGROUND

One morning, Castorena sent about 40 to 50 text messages to Mother. In the first message Castorena stated that he was going to jail for murder, he was at the college with a gun and, " 'I'm going to shoot them. I'm going to kill [Doe] at her job, or Sheriff Ramirez, whoever arrives at work first.' " Castorena included a picture of the college campus where he was enrolled as a full-time student. Underneath this picture, Castorena wrote Doe's first name and stated that she " 'exits through this building and has been following me around campus and has been telling Ramirez I have been talking to myself when really I was screaming to' -- 'screaming on the phone with my social worker. I'm going to do it.' "

Castorena texted a picture of a backpack with a rifle in it. Underneath this picture, Castorena wrote, " 'I'm going to kill Sergeant Officer Garrido and Deputy County Sheriff Ramirez, and if they run like bitches like they did three days ago, I'm just going to run up in Building 100 and start shooting facility [*sic*] members until I get to the back and kill [Jane Doe].' "

Castorena then wrote " 'You have until 9:30 to turn yourself in to the police or I will begin the shooting on campus, then take my own life.' " He included a link to a newspaper article about the Columbine shooting and stated that the two Columbine shooters were heroes. After the link to the article, Castorena wrote, " 'Just watch me. I'm not stupid and I will spray the whole [college] facility.' " Immediately after this message were three identical pictures of a backpack containing a rifle.

3

Castorena included pictures of Doe, the police department, several different police officers, and a stainless steel revolver. In between a picture of his identification card and a picture of a backpack, Castorena wrote, " 'You tell them your son is the next mass shooter.' " Castorena included three more pictures of a backpack and rifle.

After several more pictures and text messages where Castorena accused Mother of organizing to have him raped, Mother responded, " 'I am handing over your texts to the police department. You have given me no choice.' " Castorena replied, " 'Do it. I want a court hearing. I'm looking for Deputy County Sheriff Ramirez. I'm going to blast his punk ass.' " This was the last text message Castorena sent Mother that morning.

Upon receiving the text messages, Mother initially did nothing. Her only concern was for her son's mental state and well-being, not that he would make good on his threats. Mother visited a school safety officer who she worked with for advice. Mother asked about how she could get counseling for her son. After learning about the text messages, the school safety officer told Mother that she needed to go to the sheriff's department and drove her there. The school safety officer informed the sheriff's department that they were there to report a threat.

Mother told David Barboza, a criminal investigator for the Imperial County Sheriff's Office, that she was there to get help for her son, and she did not believe he would harm anybody or that he had a gun. Mother explained that Castorena was "just venting" and "pushing [her] buttons" because he was mad at her. Mother informed Barboza that her son had sent threats in the past and she did not want to be

4

responsible if something happened to her son. She also stated that Castorena was schizophrenic and she believed he was not taking his medications.

Barboza provided information about Castorena to patrol deputies and went to the college to look for him. After stopping a bus that might have been carrying Castorena, Barboza obtained Castorena's address and detained him. Inside Castorena's apartment was an iPad containing the text messages Castorena had sent Mother. No weapons were found.

Barboza conducted a recorded interview with Castorena. During the interview, Castorena seemed upset and mentioned that he was not getting justice for either a rape or some sort of sexual assault that had occurred to him. Castorena admitted sending the text messages, but denied ever possessing a gun while on campus. Castorena claimed that Doe sexually harassed him and tried to have sex with him. He also stated that he did not want to kill anyone.

At trial, Mother testified that when she gets upset with Castorena she puts him in a "timeout" by ignoring his text messages. Mother added that Castorena would then respond by trying "to get my attention with -- to see how he can push my buttons because he knows how to push my buttons. And so [Castorena] has a tendency to send text messages on what he knows that I don't like. He'll talk about certain things that I don't like. So then he does it only to try to see if I respond to a text message."

Doe testified that she worked as an academic advisor at the college and met Castorena a few years earlier for three "walk-in" appointments. Doe had no interaction with Castorena after these

appointments.  Doe denied ever sexually harassing Castorena or soliciting him for sexual intercourse.

Barboza contacted Doe the day after Castorena's arrest to inform her of the threat against her.  Barboza told her that the threats were "very serious," that she was in danger and needed to pursue a restraining order.  Doe believed that Castorena would actually shoot her.  She purchased additional surveillance equipment for her home, gave her neighbors pictures of Castorena, and was obtaining a concealed weapons permit.  By the time of trial, Doe was still "very afraid" because she did not believe anything had changed.

After the People rested, defense counsel moved for judgment of acquittal under section 1118.1, arguing that the evidence did not show Castorena intended that his threat be conveyed to Doe.  The trial court denied the motion, finding that Castorena's request that Mother tell the police about his threat was sufficient to allow the case to go to the jury.

## DISCUSSION

I. *Insufficient Evidence Supports the Criminal Threats Conviction*

A.  Standard of Review

To determine the sufficiency of the evidence, "we review the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible and of solid value, from which a rational trier of fact could find that the elements of the crime were established beyond a reasonable doubt." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 955.)  We must "view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce

6

from the evidence." (*People v. Lewis* (1990) 50 Cal.3d 262, 277.) Reversal based on insufficient evidence is warranted only if "it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Determining the sufficiency of the evidence presents a mixed question of law and fact. (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 862 (*Ryan D.*).) We defer to the fact finder's resolution of historical facts by viewing the evidence in a light most favorable to the judgment and exercise our independent judgment in determining whether the facts thus established are sufficient to meet the statutory standards. (*Ibid.*) " 'Where, as here, the jury's findings rest to some degree upon circumstantial evidence, we must decide whether the circumstances reasonably justify those findings, "but our opinion that the circumstances also might reasonably be reconciled with a contrary finding" does not render the evidence insubstantial.' " (*People v. Tafoya* (2007) 42 Cal.4th 147, 170.)

The evidence of a defendant's specific intent " 'is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) " 'We "must accept logical inferences that the jury might have drawn from the circumstantial evidence." ' " (*Ibid.*) "An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (b).) "Whether a particular inference can be drawn from the evidence is a question of law." (*People v. Austin* (1994) 23 Cal.App.4th 1596, 1604, disapproved

on other grounds in *People v. Palmer* (2001) 24 Cal.4th 856, 861, 867.)
" '[A] reasonable inference . . . "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] . . . A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence." ' " (*People v. Davis* (2013) 57 Cal.4th 353, 360 (*Davis*).)

B. Analysis

To sustain a finding that Castorena made a criminal threat in violation of section 422, the People had to show (1) Castorena willfully threatened to commit a crime that would result in death or great bodily injury to another person; (2) Castorena made the threat with the specific intent that the statement be taken as a threat, even if there was no intent of actually carrying it out; (3) on its face and under the circumstances in which it was made, the threat was so unequivocal, unconditional, immediate, and specific as to convey to Doe a gravity of purpose and an immediate prospect of execution; (4) the threat caused Doe to be in sustained fear for her safety or for the safety of her immediate family; and (5) Doe's fear was reasonable under the circumstances. (§ 422, subd. (a); *In re George T.* (2004) 33 Cal.4th 620, 630.)

" '[T]he determination whether a defendant intended his words to be taken as a threat . . . can be based on all the surrounding circumstances and not just on the words alone. The parties' history can also be considered as one of the relevant circumstances.' " (*People v. Butler* (2000) 85 Cal.App.4th 745, 754.) "[S]ection 422 does not punish such things as 'mere angry utterances or ranting soliloquies, however violent.' [Citation.] Accordingly, where the accused did not personally

8

communicate a threat to the victim, it must be shown that he specifically intended that the threat be conveyed to the victim." (*Ryan D.*, *supra*, 100 Cal.App.4th at p. 861.)

As another court stated, "[t]he kind of threat contemplated by section 422 may as readily be conveyed by the threatener through a third party as personally to the intended victim. Where the threat is conveyed through a third party intermediary, the specific intent element of the statute is implicated. Thus, if the threatener intended the threat to be taken seriously by the victim, he must necessarily have intended it to be conveyed." (*In re David L.* (1991) 234 Cal.App.3d 1655, 1659 (*David L.*).)

During closing argument, the prosecutor focused on the third element regarding Castorena's intent.[4] Defense counsel essentially conceded during his closing argument that the evidence satisfied all elements except the third element regarding whether Castorena intended the text messages be understood as a threat and intended this threat be communicated to Doe.[5]

On appeal, Castorena further narrows his argument to whether the evidence shows he intended that Doe hear the threat. He claims

---

[4]    On this element, the trial court instructed the jury that to convict Castorena of the crime, it must find that he "intended that his statement be understood as a threat and intended that it be communicated to [Doe]." (CALCRIM No. 1300.)

[5]    Defense counsel stated, "So you've heard the judge give the elements for criminal threats. [The prosecutor] has discussed it, and, as noted, I'm focusing on Element 3. That is why we're here, that's what this trial is about. And Element 3 is that the Defendant intended his statement be understood as a threat and that he intended this threat to be communicated to [Doe]."

that the evidence does not show he specifically intended the threat be communicated to Doe because he never told Mother to communicate any of his text messages to anyone other than the police so he could get a hearing, noting that he told Barboza that he did not intend to carry out his threats and never told Barboza or Mother to communicate his threats to Doe. In other words, he claims no evidence supports the inference that he intended to threaten Doe.

As Castorena impliedly conceded, the death threat directed toward Doe was unequivocal and immediate, and Doe reasonably sustained fear for her safety. After displaying an article about the Columbine shooting, pictures of the police department, Doe and a revolver, Castorena wrote, " 'tell them your son is the next mass shooter.' " When Mother informed Castorena that she would inform the police of the text messages Castorena responded, " 'Do it. I want a court hearing.' " As soon as Barboza learned of the threat he took immediate action by searching for Castorena and taking him into custody. The circumstances and way Castorena made the threat support the logical inference that he intended Mother share his communications to her with law enforcement.

Accordingly, the question becomes whether a reasonable jury could conclude from the evidence that Castorena specifically intended that law enforcement convey his threat to Doe. There is no direct evidence of Castorena's intent; thus, the jury necessarily relied on circumstantial evidence to determine whether Castorena intended that law enforcement convey his threat to Doe. For example, in *David L.*, *supra*, 234 Cal.App.3d 1655, the appellate court concluded that defendant knew the third party would convey the threat to the victim

10

because the victim and the third party were friends, the third party witnessed antecedent hostilities between defendant and the victim, and the prosecution proved that the third party informed the victim of defendant's remarks. (*Id.* at pp. 1658, 1660.)

In contrast, in *People v. Felix* (2001) 92 Cal.App.4th 905 (*Felix*), the circumstances were such that a reasonable person would not expect that the communication would in fact be relayed to the ostensible victim. In *Felix*, defendant told a jail psychologist that he would kill his ex-girlfriend when released and the psychologist warned the woman consistent with his duty under *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425 (*Tarasoff*). (*Felix*, at pp. 908-909, 911.) The appellate court rejected the People's arguments that defendant should have expected the psychologist to convey the threat because the record contained no evidence defendant "knew about *Tarasoff*[,]" had wanted the threat conveyed or had been told by the psychologist "that he would contact" the ex-girlfriend, and he had given the psychologist only the ex-girlfriend's first name. (*Felix*, at p. 913.) Additionally, the context did not support such an intent because defendant "made his remarks while discussing highly personal thoughts about homicide, suicide, and his emotions for [the ex-girlfriend] . . . in a setting where the patient ha[d] an expectation of confidentiality." (*Id.* at p. 914.)

Similarly, in *Ryan D., supra*, 100 Cal.App.4th 854, the minor turned into his art class a painting showing him shooting a police officer in the head; the officer depicted had recently cited the minor for possessing marijuana. (*Id.* at p. 857.) Reversing the juvenile court's finding that the painting constituted a criminal threat, the *Ryan D.* court explained the painting was ambiguous as an expression of intent,

11

and the minor offered the painting as an art project in school rather than making any effort to ensure the officer would see it. (*Id.* at pp. 863-864.) The officer did not learn about the painting until an assistant principal called her and then showed the painting to her. (*Id.* at p. 864.) The *Ryan D.* court stated that "although the minor's painting was intemperate and demonstrated extremely poor judgment, the evidence fail[ed] to establish that the minor intended to convey a threat to the officer." (*Id.* at pp. 857-858.)

Finally, in *People v. Roles* (2020) 44 Cal.App.5th 935 (*Roles*), defendant and his wife were involved in a family law matter. (*Id.* at p. 939.) Defendant's wife and minor child were each represented by separate counsel. (*Ibid.*) Defendant left threatening telephone messages with minor's counsel, in which he also threatened his wife's counsel. (*Ibid.*) In reversing defendant's criminal threats conviction directed toward wife's counsel, the *Roles* court noted that "[i]n the 28 messages defendant left on [minor's counsel's] phone, defendant threatened [wife's counsel] three times without ever directing [minor's counsel] to tell [wife's counsel] of the threats. Defendant further testified the voice mails 'had nothing to do with [wife's counsel].' And [wife's counsel] acknowledged defendant had her phone number and contacted her personally several times in a threatening manner, indicating he generally communicated with [wife's counsel] directly and not through [minor's counsel]." (*Id.* at p. 944.)

As we discussed, the evidence supports the reasonable inference that Castorena intended Mother communicate his threats to law enforcement. To establish a criminal threat, however, it must be shown that at the time defendant made the purported threat, the defendant

12

specifically intended that the victim learn of the threat.  (*Ryan D.*, *supra*, 100 Cal.App.4th at p. 864.)  Here, circumstantial evidence does not support a reasonable inference Castorena specifically intended that law enforcement convey his threat to Doe.

The evidence shows that Castorena directed his threatening text messages to Mother, not to Doe, the college, or law enforcement.  Castorena never asked Mother to communicate his threat to Doe.  During his post-arrest interview, Castorena did not ask Barboza to convey his threat to Doe.  Instead, Castorena told Barboza that he was seeking attention, had no intent to carry out his threat and was just scared.  Nonetheless, Barboza informed Doe of the threat the day after Castorena's arrest.  On the day Castorena sent the text messages, Doe knew only that the college had been threatened and that someone had been arrested.  As the record amply demonstrated, Castorena knew Doe and how to contact her, and could have easily directed his threat to Doe.  He also could have asked Barboza to convey his threat to Doe but did not do so.

For a defendant to intend a result, the defendant must "act[] for the purpose or with the desire of causing a particular result."  (*People v. Davenport* (1985) 41 Cal.3d 247, 262.)  Unlike the situation in *David L.*, *supra*, 234 Cal.App.3d 1655, the circumstantial evidence does not support the reasonable inference that Castorena specifically intended that law enforcement communicate his threat to Doe.  The prosecutor cited no evidence during closing argument to support an inference that Castorena intended law enforcement convey his threat to Doe.  Rather, to fill this evidentiary void, the prosecutor argued that during the course of the investigation law enforcement would speak to Doe and

"[o]f course, she's going to find out." However, Doe finding out about the threat at some point during the investigation, and Castorena specifically *intending* that his threat be communicated to Doe, are not the same.

A reasonable inference cannot support a finding beyond a reasonable doubt when it is based on the nonexistence of evidence, rather than the existence of evidence. (*Davis, supra*, 57 Cal.4th at p. 360 [inference must be drawn from evidence rather than mere speculation as to probabilities without evidence].) The inference that Castorena intended that law enforcement convey his threat to Doe is based entirely on the prosecutor's conjecture, not evidence. Like *Ryan D., supra*, 100 Cal.App.4th 854, "the totality of the circumstances establishes that [Castorena] could have, and perhaps even should have, foreseen the possibility that [Doe] would learn of [the threat]. But the evidence is not sufficient to establish that, at the time he acted, [Castorena] harbored the specific intent" that law enforcement inform Doe of his threat. (*Id.* at p. 864.)

In summary, we conclude substantial evidence does not support the jury's finding that Castorena made a criminal threat within the meaning of section 422. Castorena's conviction must be reversed and this charge cannot be retried. (See *Burks v. United States* (1978) 437 U.S. 1, 18 ["the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient"]; *People v. Garcia* (2014) 224 Cal.App.4th 519, 526 [reversal of enhancements for insufficient evidence precluded retrial].)

14

DISPOSITION

The judgment is reversed.


                                                  O'ROURKE, J.

WE CONCUR:



McCONNELL, P. J.



AARON, J.