Filed 10/1/24  P. v. Jones CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　v.<br><br>ISAAC JONES, JR.,<br><br>　　Defendant and Appellant. | G062464<br><br>(Super. Ct. No. 19CF0869)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Daniel B. Goldstein, Judge.  (Judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Ellen M. Matsumoto, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　　　\*　　　　\*

Defendant Isaac Jones, Jr., was convicted of criminal threats and attempted criminal threats against various judges of the Central Justice Center of the Orange County Superior Court (Central Justice Center). The convictions arose out of an incident in which he sent a chemical-laden box to the Central Justice Center that included pages in which he had written death threats to the judges. He raises two issues on appeal.

First, he contends the jury was improperly instructed because it was not instructed that he needed to specifically intend that a third party convey the threat to the judges. We conclude that is not an element of the offense that the court had a sua sponte duty to instruct on. Instead, that is, at most, a pinpoint instruction that, because defense counsel did not request it, was forfeited.

Second, he contends no substantial evidence supported the notion that he specifically intended to communicate the threats to the judges. However, we conclude the circumstantial evidence supports a finding that he did. Finding no error, we affirm the judgment.

FACTS

On June 6, 2018, the postal service delivered a "suspicious" package to the Central Justice Center. Jones had mailed the package. After the bomb squad X-rayed the package for safety, a court bailiff with the sheriff's department opened it and discovered approximately 100 pages of documents that looked like legal paperwork. Among the documents were several copies of Jones's birth certificate and a citation with Jones's name, address, and date of birth.

The contents of the package were subsequently examined by Orange County Sheriff Deputies in the judicial protection unit (JPU), a unit

2

that investigates threats or unusual occurrences involving judicial officers and court employees. The documents were printed on blue paper and contained red thumbprints as a form of a signature, both of which are indicative of "sovereign citizen" ideology. Individuals who identify as "sovereign citizens" do not accept the authority of the government and believe the laws do not apply to them. Sovereign citizens are classified as "extremists" by law enforcement and have committed violent acts against government officials. For this reason, sovereign citizens give JPU deputies cause for concern. JPU did not perceive any threats in the documents contained in the June 6, 2018 package Jones sent.

Five months later, on November 21, 2018, Jones walked into the Central Justice Center and delivered an envelope to courtroom number C5, where Supervising Judge Kimberly Menninger was assigned. Courtroom C5 handled the master arraignment calendar for all felony cases in the county's court system.

Similar to the prior package Jones sent in June, the envelope had red fingerprints on it and contained documents printed on blue paper. The documents had writings that were also consistent with sovereign citizen ideology. One of these documents stated, "Public Officers Beware! [¶] No Excuses Accepted [¶] No Exceptions! Non-Compliance is Not a [¶] 'Technical Omission[.]'" Another document called for the immediate release of Jones's nephew, who was an inmate at the time in Orange County and demanded $65 million. Jones had also created a pardon for his nephew.

About two months after Jones delivered the envelope, he sent a third package to the Central Justice Center. On January 14, 2019, Scott Strong, one of the deputies assigned to JPU, was notified about a box that was delivered to the courthouse and had similar markings as the first two

packages Jones had sent. The outside of the box had red thumbprints and listed Jones's name and address as the sender. The box was addressed to Presiding Judge Kimberly Menninger. Deputy Strong had the box X-rayed for safety and then stored it in department C63.

Deputy Strong opened the box a few days later, on January 17, 2019. Upon opening it, he was immediately overcome by fumes of a chemical agent emanating from inside the box. Deputy Strong felt a burning sensation on his lips, throat, and lungs, similar to the effects of pepper spray. Deputy Strong took the box into the hallway and called for additional deputies. The courthouse was placed on a lockdown and evacuated. In light of the chemical agent, the bomb squad was called to further evaluate the contents of the box. Deputy Strong was taken to the emergency room. Despite running tests, doctors were unable to identify the chemical.

About two months later, in March 2019, two deputies from JPU examined the contents of the third box in an empty warehouse out of an abundance of caution. The deputies discovered a stack of approximately 500 documents. As they started pulling out pages, they immediately felt a burning sensation in their throats, tingling in their lungs, and slight irritation in their eyes, similar to the effects of pepper spray.

The deputies spent 15 to 20 minutes going through the stack of pages. Like the prior two packages from Jones, the documents in this third box were on blue colored paper and contained fingerprints in red ink. They also referred to Jones and his nephew.

Among the documents was a 21-page "Red Notice Alert" created by Jones. A red notice is an Interpol warrant that notifies law enforcement about the need for the immediate apprehension and arrest of an individual. Jones's red notice alert consisted of a chart with five columns titled:

4

"Offender List Most Wanted," "Date of Convicted 11/21/2018," "Capital Punishment" "Inmate IDt," and "Courtroom Number." Listed as the "offenders" were the partial names of several Orange County Superior Court judges. The red notice alert also stated each judge was convicted of "PRIVACY AND HIGH TREASON." The listed punishment for each judge was "DEATH BY HANGING UNTEL DEAD[.]"

Each judge's "Inmate IDt" was their assigned courtroom number and their "courtroom number" was the courtroom's telephone number. Notably, the "date of convicted," November 21, 2018, was the date Jones had hand delivered the second package (the envelope) that contained the "warning" message to "all judicial officers."

The judges' names were partially obscured, which appears to have been caused by failing to line up the page on a copier correctly. Nevertheless, JPU was able to easily determine each judge's full name because the visible portion of their names coincided with the listed courtroom number ("Inmate IDt") and courtroom phone number. The order of the named "offenders" also matched the order of the judges' names on the superior court's Web site. One of the deputies subsequently went through the red notice alert and wrote each judge's full name next to the printed partial spelling of it.

Another document in the box stated, "REWARD FOR PRIVACY AND HIGH TREASON" and indicated the "DEFENDANTS" confessed in open court and were found guilty of "PRIVACY AND HIGH TREASON." This page had several pennies glued to it as a reward.

Another document included in the box stated in part, "PUT THE TRAI[T]ER TO DEATH AT ONCE, CARY OUT YOUR ORDO! FORTHWITH! WRIT OF EXECUTION APPROVE." That same document

5

also stated, "DEATH WARRANT ISSUES, FIN VERDICT. YOU HAVING BEEN FOUND GUILTY OF TREASON AND HAVING EXHAUSTED ALL POSSIBLE APPEALS. FOR THE RECORD AND ON THE RECORD EXECUTION IS ORDO FORTHWITH. YOU NEXT IN LINE ONE AT A TIME. ORDO SOME MORE BODY BAGS FROM FD 685 UNDERTAKER HERE . . ." This document listed several other individuals and groups, though it did not explicitly mention the judges.

On another document in the box, Jones wrote in part, "YOUR TIME IS UP 2018 2019 2020 . . . . . YOU WILL NEVER SEE 21 AGAIN. IF YOU SEE YOUR NAME . . . . . . I WISH YOU HAD MORE TIME . . . . . . A LIFE FOR A LIFE . . . . . . I WILL TAKE YOU FLEAS, BONES, SOUL, SPIRIT, YOUR LIFE, ALL THIS IS . . . ."

The deputies found the third package to be a "clear escalation" from Jones's prior two packages. Based on the third package's content, the deputies were concerned there was a threat to the named judges. JPU deputies spoke with each judge named in Jones's red notice alert. During their discussion, the deputies explained what a red notice was to the judges. The deputies also relayed the concern that the documents contained a death threat. Many of the judges felt fearful upon hearing about Jones's threat.

The Orange County crime lab examined the third box Jones sent and the results of the chemical tests were inconclusive. The lab was unable to collect an amount of the chemical sufficient for the lab equipment to show results.

Jones was arrested on March 27, 2019. His thumbprints had red ink on them, like those on the packages he had sent.

The jury convicted him of 13 counts of threatening a public official (Pen. Code, § 76, subd. (a)(1); counts 1-7, 11, 12, 15-18) and six counts

6

of attempted threat upon a public official (counts 19-24).  The court sentenced Jones to a total term of 12 years in county jail.  Jones timely appealed.

## DISCUSSION

The two issues raised by Jones on appeal both revolve around the mens rea of threatening a public official.  In particular, Jones contends that where the threat is conveyed through a third party, the People must prove that the defendant specifically intended for the third party to convey the threat to the victim.  He then contends that (1) the jury was not properly instructed on this principle, and (2) there was no evidence to support that element.  We begin by generally addressing the mens rea of criminal threats, after which we address each of the issues Jones raises.

Penal Code section 76, subdivision (a),[1] provides in relevant part, "Every person who knowingly and willingly threatens the life of . . . any . . . judge, . . . with the specific intent that the statement is to be taken as a threat, and the apparent ability to carry out that threat by any means, is guilty of a public offense . . . ."  The statute goes on to define "threat" as follows:  "'Threat' means a verbal or written threat . . . made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family."  (*Id.*, subd. (c)(5).)  "Thus, the essence of a violation of section 76 is the making of a statement with the intent that it be taken as a threat, along with the apparent ability to carry out the threat, resulting in actual reasonable fear on the part of the victim."  (*People v.*

---

[1]All statutory references are to the Penal Code.

7

*Barrios* (2008) 163 Cal.App.4th 270, 277.) "[T]he harm punished by section 76 [is] the victim's fear . . . ." (*Id.* at p. 278.)

Jones contends there is an additional element of the crime where the threat is communicated through a third party: the specific intent that the third party communicate the threat to the victim. To support this argument, Jones relies principally on *In re Ryan D.* (2002) 100 Cal.App.4th 854 (*Ryan D.*), a case that arose in the context of section 422 (criminal threats). Section 422 also requires the defendant have the specific intent that the statement be taken as a threat.

In *Ryan D.*, the minor was angry at an officer who had cited him for possession of marijuana, so he submitted a painting in his art class depicting him shooting the officer in the back of the head. (*Ryan D.*, *supra*, 100 Cal.App.4th at p. 857.) The juvenile court found the minor had made a criminal threat in violation of section 422. (*Ryan,* at p. 857.) The Court of Appeal reversed stating, "[T]he statute 'was not enacted to punish emotional outbursts, it targets only those who try to instill fear in others.' [Citation.] In other words, section 422 does not punish such things as 'mere angry utterances or ranting soliloquies, however violent.' [Citation.] Accordingly, where the accused did not personally communicate a threat to the victim, it must be shown that he specifically intended that the threat be conveyed to the victim." (*Id.* at p. 861.)

The court concluded there was insufficient evidence the minor intended that the threat be conveyed to the officer. "After completing the painting, the minor took it to class and turned it in for credit. This would be a rather unconventional and odd means of communicating a threat. Ordinarily, a person wishing to threaten another would not do so by communicating with someone in a position of authority over the person

8

making the threat." (*Ryan D.*, *supra*, 100 Cal.App.4th at p. 863.) "It is true the minor conceded it was reasonable to expect that [the officer] eventually would see the minor's painting. However, this concession was made at the urging of an assistant principal near the end of a 40-minute interview in which the minor stated that he did not think [the officer] would ever see the painting." (*Id.* at pp. 863-864.) "[T]he totality of the circumstances establishes that the minor could have, and perhaps even should have, foreseen the possibility that [the officer] would learn of and observe the painting. But the evidence is not sufficient to establish that, at the time he acted, the minor harbored the specific intent that the painting would be displayed to [the officer]." (*Id.* at p. 864; see *People v. Felix* (2001) 92 Cal.App.4th 905, 911-912 [defendant's statements to psychotherapist, a mandatory reporter, that he wanted to kill girlfriend were not specifically intended to be conveyed to girlfriend].)

Both of the issues raised by Jones on appeal stem from the above discussion in *Ryan D.*

1. *Instructional Error*

First, Jones contends the trial court committed instructional error by not giving a sua sponte instruction that "[f]or third-party threats, the defendant must have the specific intent that the third-party communicate the threat to the individual victims." Jones did not request this instruction at trial.

The instruction that the court gave the jury was based on CALCRIM No. 2650, and provided as follows:

"The defendant is charged in Counts 1-18 with threatening a public official in violation of . . . section 76.

9

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant willingly threatened to cause serious bodily harm to a judicial officer;

"2. *When the defendant acted, he intended that his statement be taken as a threat*;

"3. When the defendant acted, he knew that the person he threatened was a judicial officer;

"4. When the defendant acted, he had the apparent ability to carry out the threat;

"AND

"5. The person threatened reasonably feared for his/her safety or the safety of his/her immediate family."  (Italics added.)

"The defendant does not have to communicate the threat directly to the intended victim, but may do so through someone else."

"A trial court has a sua sponte duty to correctly instruct the jury on all elements of any charged offenses." (*People v. Sta Ana* (2021) 73 Cal.App.5th 44, 60.)  But "[a] trial court has no sua sponte duty to revise or improve upon an accurate statement of law without a request from counsel [citation], and failure to request clarification of an otherwise correct instruction forfeits the claim of error for purposes of appeal [citations]." (*People v. Lee* (2011) 51 Cal.4th 620, 638.)

The instruction given here was an accurate statement of the law. Indeed, it tracked the elements in the language of section 76 almost verbatim, including the critical language setting forth the mens rea:  "he intended that his statement be taken as a threat."  While we agree that the law set forth in *Ryan D., supra*, 100 Cal.App.4th 854 is correctly stated, *Ryan*

*D.* does not create a new element of the crime. Rather, it clarifies how the mens rea logically applies when the threat is communicated indirectly. That logic was spelled out succinctly in *In re David L.* (1991) 234 Cal.App.3d 1655, 1659: "Where the threat is conveyed through a third party intermediary, the specific intent element of the statute is implicated. Thus, if the threatener intended the threat to be taken seriously by the victim, he must necessarily have intended it to be conveyed." This is undoubtedly a sound *deduction* from the language of the statute, but it is just that: a proposition already encompassed by the statutory language. It is not a separate element.

> The supplemental instruction suggested by Jones on appeal may well have been an appropriate pinpoint instruction in this case. However, he never requested it. Accordingly, the claim of instructional error is forfeited.

2. *Substantial Evidence*

> Jones's second contention is that there was no substantial evidence he intended the threats to be conveyed to the individual judges. In resolving a substantial evidence challenge, we review "the entire record in the light most favorable to the judgement to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

> Jones's argument relies primarily on the fact that the judges' names were partially obscured. However, the jury could easily conclude from the document itself that the obscuring of the names was not intentional but instead was an error in the copying process. The judges were easily

11

identified by the partial names together with their courtroom and phone numbers.

But even if the obscured names created some ambiguity about Jones's intent, the remainder of the evidence overwhelmingly supported an inference that Jones intended the threats to reach the judges. First and foremost, the box was sent *to the courthouse*. Not only was it sent to the courthouse, but it was addressed to the supervising judge, who oversaw the operations of the threatened judges. Thus, the present case is clearly distinguishable from *Ryan D.* and *People v. Felix*, *supra*, 92 Cal.App.4th 905, where the intermediaries had no direct connection to the victims. We can think of no reason why Jones would send the box to the courthouse other than to ensure that it was seen by the judges. Second, the box was laced with a chemical agent. This would ensure that the threat would be taken seriously and, therefore, communicated to the individual judges.[2] Third, Jones had a motive to scare the judges: he was evidently displeased with how the justice system had treated his nephew. Fourth, the second package contained a warning to all public officers. A warning is obviously meant to be conveyed to the person warned. And the third package's "sentence" was based on the warning, raising an inference that the sentence was meant to be conveyed as well. Finally, the content of the speech itself indicates an intent that the threat be communicated to the judges. The sentence of "DEATH BY HANGING UNTEL DEAD" was obviously alarming enough that it would not simply be ignored. Elsewhere Jones stated, "I WISH YOU HAD MORE

---

[2] Jones objects that under *Ryan D.* foreseeability is not the standard. We agree that foreseeability is not the touchstone, but it is certainly a relevant circumstance in assessing whether the defendant harbored specific intent.

12

TIME . . . . . A LIFE FOR A LIFE . . . . . . . . . I WILL TAKE YOU FLEAS, BONES, SOUL, SPIRIT, YOUR LIFE, ALL THIS IS . . . ." This is plainly a message meant for the judges.

Thus, the totality of the circumstances furnished ample evidence that Jones intended his threats to be conveyed to the judges.

## DISPOSITION

The judgment is affirmed.

SANCHEZ, J.

WE CONCUR:

MOORE, ACTING P. J.

GOETHALS, J.