Filed 12/20/24  P. v. Garcia CA5
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. EMMANUEL GARCIA, Defendant and Appellant. | F083245 (Super. Ct. No. BF184915A) **OPINION** |

-ooOoo-

### THE COURT\*

APPEAL from a judgment of the Superior Court of Kern County.  Gregory A. Pulskamp, Judge.

Kaiya R. Pirolo, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell and Kimberley A. Donohue, Assistant Attorneys General, Julie A. Hokans, Nikta (Nikki) Allami and Kari Ricci Mueller, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Levy, Acting P. J., Poochigian, J. and Snauffer, J.

This matter is before us on transfer from our Supreme Court for reconsideration in light of *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*), which settled a division among courts of appeal on the appropriate standard for assessing prejudice in the context of noncompliance with the requirements of Penal Code[1] section 1170, subdivision (b)(1), (2), and (3) as modified by Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567). In accordance with the direction of the Supreme Court, we have vacated our earlier decision and permitted supplemental briefing from the parties.

Defendant Emmanuel Garcia was found guilty by a jury on seven criminal counts and was sentenced to four years eight months in prison. His sentence included upper term sentences on two counts, one of which was stayed pursuant to section 654. On appeal, defendant contends that (1) his sentence must be vacated, and the case remanded for resentencing in light of *Lynch* and Senate Bill 567's amendments to section 1170, subdivision (b); and (2) the trial court erred in failing to stay, pursuant to section 654, subdivision (a), the resisting a police officer conviction. The People disagree on both accounts. We vacate defendant's sentence and remand for full resentencing in conformity with section 1170, subdivision (b). In all other respects, we affirm.

## PROCEDURAL SUMMARY

On May 7, 2021, the Kern County District Attorney filed an information charging defendant with buying or receiving a stolen vehicle (§ 496d, subd. (a); count 1), driving in willful or wanton disregard for safety of persons or property while fleeing a pursuing peace officer (Veh. Code, § 2800.2; count 2), evading a peace officer by driving on a highway in the opposite direction of traffic (Veh. Code, § 2800.4; count 3), misdemeanor driving on a suspended or revoked license (Veh. Code, § 14601.1, subd. (a); count 4), misdemeanor failing to notify a property owner after a collision resulting in damage (Veh. Code, § 20002, subd. (a); count 5), misdemeanor resisting or obstructing a police

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

2.

officer (§ 148, subd. (a)(1); count 6), and misdemeanor possession of a device used for unlawfully injecting or smoking a controlled substance (Health & Saf. Code, § 11364; count 7).[2]  As to count 1, the information further alleged that defendant had suffered a prior vehicle theft conviction (§ 666.5, subd. (a)).

On August 2, 2021, the jury found defendant guilty on all counts.  On the same date, at a bifurcated proceeding outside the presence of the jury, the trial court found the prior conviction allegation as to count 1 to be true in reliance on a certified copy of defendant's RAP sheet.

On August 27, 2021, the trial court sentenced defendant to an aggregate term of four years eight months as follows:  on count 1, four years (the upper term); on count 2, eight months (one-third the middle term), consecutive to the term on count 1; on count 3, three years (the upper term), stayed pursuant to section 654 "until the successful completion of the sentence imposed above in [c]ounts 1 and 2"; on counts 4, 5, and 7, 180 days in jail, concurrent with the sentence on count 1; and on count 6, one year in jail, concurrent with the sentence on count 1.

On the same date, defendant filed a notice of appeal.

After we issued an opinion in this case, defendant petitioned for review and the petition was granted.

On August 1, 2024, our Supreme Court issued its opinion in *Lynch*.

On October 16, 2024, our Supreme Court transferred the matter to this court with directions to vacate our prior opinion and reconsider in light of *Lynch*.

## FACTUAL SUMMARY

On March 27, 2021, R.V. drove himself and his wife to a shopping center in Kern County in his black diesel pickup truck.  He estimated that the truck was worth $20,000.  When he exited a grocery store at the shopping center, he saw that his truck

---

**2**    An eighth count was alleged, but it was dismissed prior to trial.

was gone but his keys were still in his pocket. The truck was registered in R.V.'s name alone and neither he nor his wife had given anyone permission to take it. R.V. did not know defendant and had not given him permission to take the truck. R.V. reported the truck stolen.

R.V.'s truck was eventually recovered, and an officer called him one morning at 4:00 a.m. to inform him that it had been recovered.

In March and April 2021, Joshua Patty was a Bakersfield Police Officer assigned to the patrol division. One of his duties in that role was making vehicle stops. On March 31, 2021, from 9:00 p.m. to April 1, 2021, at 7:00 a.m., Patty and his partner, Bakersfield Police Officer Ryan Jordan, were on patrol in a marked patrol vehicle. At approximately 3:27 a.m., a black pickup truck drove past Patty and Jordan. Jordan conducted a records check of the license plate—which matched the plate on R.V.'s truck—and it returned stolen. Patty saw that defendant was driving the truck. He then attempted to conduct a traffic stop by activating his overhead red and blue lights and siren. Defendant did not yield to the stop.

Defendant drove the truck through a parking lot, over a sidewalk, and continued southbound on the street. Defendant continued through an intersection with a stop sign without stopping, turned east and drove along the street against the flow of traffic. Patty and Jordan followed on the correct side of the street. Defendant continued driving against traffic until he entered a southbound freeway entrance. Defendant drove south on the freeway, "from one edge [of] the freeway to the other." At the time, there was freeway construction and defendant drove "behind … the concrete barriers" and on the shoulders of the freeway. Defendant drove as though he was going to exit the freeway but made a late turn down the embankment back onto the freeway. He continued southbound on the freeway, "swerving between vehicles" on the freeway. Defendant again drove toward a freeway exit and, after driving toward the westbound exit, "climbed

4.

a steep dirt embankment and then began to travel the wrong way," eastbound on the street.

During the pursuit thus far, Patty had been reporting the pursuit to other officers via his patrol vehicle's radio. When defendant climbed the embankment, Patty ceased the pursuit because "[i]t was dangerous. [He] was scared the driver was going to kill someone." Approximately one minute later, Patty was informed that Bakersfield Police Officer Nickolas Brackett had located the truck and Patty attempted to rejoin the pursuit. Brackett had been preparing to use spike strips to stop the truck when he saw the truck driving eastbound in the westbound off-ramp to the freeway. He saw that defendant was the driver. Defendant continued to flee, driving against the direction of traffic as Brackett pursued. Brackett activated his red and blue lights and siren, but defendant did not yield. Defendant fled through a dirt field and "did several donuts … to kick up dirt and debris," at which point Brackett lost sight of him. Brackett rejoined the pursuit not long after when other officers advised him of the location of the truck. He saw defendant drive through a chain link fence and into a church parking lot.

Approximately 10 minutes after Patty had ceased pursuit, Patty and Jordan joined other officers where they found the truck parked, without any inhabitant, behind the church. Three fences were knocked down in the area where the truck was found. The officers formed a perimeter and began searching the surrounding neighborhood. More than five minutes but fewer than 30 minutes later, defendant was located near a pile of rubble in the front yard of a neighboring residential property, approximately 500 yards from the truck. Jordan found drug paraphernalia, specifically, a glass smoking pipe usually used for smoking methamphetamine or base cocaine, in defendant's right front pocket. Defendant also possessed gloves and a ski mask. Gloves and facial coverings are often possessed by thieves to protect their identities when committing offenses.

Patty looked at the interior of the truck and noticed that the ignition was damaged such that the truck could be started without a key. He did not locate any key in or near

5.

the truck. He also ran a records check on defendant's driver's license and found that his license was suspended.

When Patty called his report into dispatch during the pursuit, he described defendant as a White or Hispanic male with long hair, wearing a blue baseball cap. He acknowledged that defendant looked at trial much the same as he did on the date of the offense. He acknowledged further that defendant had a shaved head and did not have long hair.

## DISCUSSION

### I.  Senate Bill 567

Defendant contends that we must vacate the sentence and remand the matter because he did not admit, and the jury did not find true, the facts underlying the circumstances in aggravation that the trial court relied upon in imposing the upper term, nor was the error harmless under *Lynch* because insufficient evidence was submitted to conclude beyond a reasonable doubt that the jury would have found all circumstances in aggravation true and the record provides no clear indication that the court would have imposed the upper term in light of the new presumptive middle term. The People agree that three of the four circumstances in aggravation were not proved in compliance with section 1170, subdivision (b), but argue any error in imposition of the upper term is harmless beyond a reasonable doubt under *Lynch*. We agree with defendant that (1) the circumstances in aggravation were not proved in compliance with section 1170, subdivision (b), (2) the evidence presented in support of the circumstances in aggravation does not permit us to conclude beyond a reasonable doubt that a jury would have found the facts underlying each circumstance in aggravation true, and (3) the record does not provide a clear indication that the trial court would have imposed the upper term had it been aware of the new presumptive middle term.

## A. Additional Background

The trial court read and adopted the probation officer's recommendation regarding the following four circumstances in aggravation and one circumstance in mitigation. The court reasoned as follows:

> "I will note that in a circumstance in mitigation, he has … successfully completed actually or satisfactorily completed parole in two different cases as noted in the probation department. However, beyond that there are numerous circumstances in aggravation and that includes[, as the first circumstance in aggravation,] what [the prosecutor] has just referred to, the fact that the defendant has many prior felony convictions as an adult. Number two, the defendant has served five prior prison terms so those prior convictions for felonies were not minor. They were very serious cases resulting in prison commitments.
>
> "The third aggravating factor or circumstance in aggravation is the fact that the defendant was actually on misdemeanor probation and on post[]release community supervision when these events actually happened. And then finally the fourth circumstance in aggravation is that the defendant's prior performance on misdemeanor probation, felony probation, post[]release community supervision, and state parole on other cases, not the two that I referred to that he completed satisfactory but others, all of those were unsatisfactory and that he failed to abide by the terms and/or conditions and re-offended.
>
> "When I look at all that together, the facts of this case as well as the circumstances in mitigation and aggravation, I find that the circumstances in aggravation greatly outweigh those and … I also agree with the probation officer that the upper term is justified for the reasons and the factual basis that I just mentioned."

The trial court then imposed the upper term on counts 1 and 3. Count 3 was stayed pursuant to section 654.

Defendant did not admit, and the jury did not find true, any of the aggravating circumstances relied upon by the trial court in imposing the upper term. However, the record reflects that the trial court relied upon a certified record of defendant's convictions—People's exhibit 18—in making findings on all circumstances in aggravation.

7.

**B. Compliance with Section 1170, Subdivision (b), as Modified by Senate Bill 567**

From March 30, 2007, to December 31, 2021, California's determinate sentencing law specified that "[w]hen a judgment of imprisonment [wa]s to be imposed and the statute specifie[d] three possible terms, the choice of the appropriate term … rest[ed] within the sound discretion of the court." (§ 1170, former subd. (b).)

Effective January 1, 2022, Senate Bill 567 amended section 1170, subdivision (b). (Stats. 2021, ch. 731, § 1.3.) Section 1170, subdivision (b)(2) now provides, "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) As an exception to the general rule, the court may consider the fact of the defendant's prior convictions based on a certified record of conviction without it having been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial. (§ 1170, subd. (b)(3); see *Erlinger v. United States* (2024) 602 U.S. 821, 838 (*Erlinger*) ["[A] judge may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.' "])

In this case, the jury made no findings regarding the aggravating circumstances nor did defendant admit any facts in support of those circumstances. However, the trial court had before it a certified record of defendant's RAP sheet, which contained his prior convictions and dispositions, including prior prison and jail sentences and grants of probation. The RAP sheet also reflected violations of probation, parole, and postrelease community supervision. Section 1170, subdivision (b)(3) permitted the trial court to rely on the certified record of conviction to prove defendant's prior convictions for purposes of proving aggravating circumstances. As a result, the parties agree that the

first aggravating circumstance relied upon by the trial court—that defendant had suffered numerous prior convictions—was proved in compliance with amended section 1170, subdivision (b). However, the parties also agree that Fifth and Sixth Amendment principles, as set out in *Erlinger*, prohibit the trial court from having made any of the aggravating circumstances findings; each must have been found true by a jury beyond a reasonable doubt. (See *Erlinger*, *supra*, 602 U.S. at pp. 835–838.)[3] The parties further agree that neither section 1170, subdivision (b)(3), nor the Fifth and Sixth Amendments, permit a trial court to rely on a certified record of conviction to prove the second through fourth circumstances in aggravation—that defendant had served five prior prison terms, that defendant was on a grant of postrelease community supervision when he committed the offenses at bar, and that his prior performance on probation, parole, and postrelease community supervision was unsatisfactory. (See *Erlinger*, *supra*, 602 U.S. at p. 838.)

Despite three of the aggravating circumstances having not been proved in compliance with section 1170, subdivision (b)(2) and (3), and the parties agreement that none of the aggravating circumstances findings comply with *Erlinger*, the upper term was imposed on counts 1 and 3.[4] Therefore, unless imposition of the upper term on counts 1 and 3 was harmless, the sentence must be vacated and the matter remanded to the trial court for resentencing in compliance with section 1170, subdivision (b).

---

**3** We need not weigh in on this issue to resolve this case. Moreover, we note that the issue is presently pending before our Supreme Court in *People v. Wiley*, review granted March 12, 2024, S283326, so weighing in on the issue would serve no broader purpose.

**4** Again, we note that the law has changed since the trial court imposed the sentence in this case. At the time the court imposed the sentence, it complied with the applicable law.

### C. Harmless Error

#### 1. Legal Standard

In *Lynch*, our Supreme Court held that where a trial court employed a former version of section 1170, subdivision (b), and relied on facts not proved in compliance with section 1170, subdivision (b) to impose the upper term, the sentence must be vacated and the matter remanded unless we conclude beyond a reasonable doubt that the jury would necessarily have found the facts underlying *all* circumstances in aggravation relied upon by the trial court true beyond a reasonable doubt.  (*Lynch*, *supra*, 16 Cal.5th at pp. 742–743, 761.)  "In making this determination, we may ' "examine[] what the jury *necessarily* did find and ask[] whether it would be impossible, on the evidence, for the jury to find *that* without *also* finding the missing fact as well." [Citation.]  …'  We may also find the omission harmless if we can conclude beyond a reasonable doubt 'that the omitted [fact] was uncontested and supported by overwhelming evidence.' " (*Id*. at p. 775.)  Further, because Senate Bill No. 567 "altered the scope of the trial court's discretion," for sentences imposed under the former version of section 1170, subdivision (b), "the record must clearly indicate that the court would have found an upper term justified had it been aware of its more limited discretion."  (*Id*. at p. 743; see *id*. at p. 777 [providing examples of the "kind of definitive statements" that our Supreme Court has found to clearly indicate a trial court "would not impose a lesser sentence under any circumstances"].)

#### 2. Analysis

The People contend that any error is harmless because all factors were provable to a jury beyond a reasonable doubt and the trial court clearly indicated it would impose the same sentence in light of the presumptive middle term when it indicated "the four aggravating circumstances 'greatly outweigh[ed]' the single circumstance in mitigation .…"  Defendant contends that the error was not harmless because "the probation report would be inadmissible at a jury trial and the RAP sheet does not provide

sufficient facts to support [the aggravating] finding[s]" (capitalization omitted) and the trial court's sentencing statement was not a clear indication or definitive statement that it would not impose a lesser sentence under any circumstances. We agree with defendant in both respects.

Returning to the aggravating circumstances relied upon by the trial court, we first consider whether we can conclude beyond a reasonable doubt the aggravating circumstances—although at least the second through fourth were not proved in compliance with section 1170, subdivision (b) and none were proved in compliance with the Fifth and Sixth Amendments as outlined by *Erlinger*—would nevertheless *all* have been found true by the jury beyond a reasonable doubt. (*Lynch*, *supra*, 16 Cal.5th at pp. 742–743, 761.)

As defendant points out, the probation officer's report would not have been admissible to prove any of the circumstances in aggravation. (See *People v. Reed* (1996) 13 Cal.4th 217, 221–222 [a probation report excerpt detailing the defendant's statement was inadmissible hearsay]; see *Erlinger*, *supra*, 602 U.S. at pp. 841–842 [judicial records often contain "old recorded details, prone to error, sometimes untested, often inessential, and the consequences of which a defendant may not have appreciated at the time, [which] 'should not come back to haunt [him] many years down the road' "].) The only other evidence relied upon by the trial court was defendant's RAP sheet. While the RAP sheet did reflect defendant's prior convictions and dispositions (including prior prison and jail sentences and grants of probation), and violations of probation, parole, and postrelease community supervision, it sheds no light on how the jury would have viewed the more subjective consideration of whether defendant's performance on probation, parole, or postrelease community supervision was "unsatisfactory." (Cal. Rules of Court, rule 4.421(b)(5).)

Moreover, our Supreme Court has "cautioned that a prejudice analysis following a change in the law respecting proof of aggravating circumstances 'can be problematic.

11.

The reviewing court cannot assume that the record reflects all of the evidence that would have been presented to the jury, or that the defendant had the same incentive and opportunity at a sentencing hearing to contest the aggravating circumstance. [Citation.] … "[T]o the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." [Citation.] … "Many of the aggravating circumstances described in the rules require an imprecise quantitative or comparative evaluation of the facts," ' with the victim's particular vulnerability being one example." (*Lynch*, *supra*, 16 Cal.5th at pp. 775–776.) Such is also the case here. Whether a defendant's performance on probation was unsatisfactory requires similar imprecise evaluation of the facts. Further, as our Supreme Court cautioned, the RAP sheet may not reflect all of the positive portions of defendant's performance on parole, probation, and postrelease community supervision. For those reasons, we cannot conclude beyond a reasonable doubt that the jury would have found beyond a reasonable doubt that defendant's performance on parole, probation, and postrelease community supervision was unsatisfactory.

Finally, as to whether the trial court would impose the same term in light of the change in the standard for exercise of discretion, the People rely on the trial court's refusal to reduce counts 1 and 2 to misdemeanors and comments that "the circumstances in aggravation *greatly* outweigh" (italics added) the circumstance in mitigation and that defendant "acted in a very extreme fashion" and his conduct was "egregious" with respect to counts 2 and 3 to demonstrate that the trial court would have imposed the upper term even under the new presumptive middle term maximum. However, as defendant correctly points out, the trial court referred to count 1—the principal term for which an upper term sentence was imposed and not stayed—as being "a serious crime," but "a little bit more generic, a little bit more along the lines of what we typically see in auto

12.

thefts." The trial court's statement is not the "kind of definitive statement[] that [our Supreme Court] ha[s] found to clearly indicate it would not impose a lesser sentence under any circumstances." (*Lynch*, *supra*, 16 Cal.5th at p. 777.) The *Lynch* court provided two examples of such statements: first, where the trial court found the defendant was " ' "deserving [of] the ultimate sentence of death," ' [the] trial court observed that the defendant was ' "the worst of the worst," ' that he ' "show[ed] absolutely no remorse" ' and that ' "[i]t's as if he has no soul" ' ' "; and second, "where 'the sentencing court announces that it is aware of forthcoming legislation and then explains how it would exercise its discretion under that legislation.' " (*Ibid.*, citing *People v. Flores* (2020) 9 Cal.5th 371, 432, and *People v. Salazar* (2023) 15 Cal.5th 416, 431.) Neither is the case here. In short, the court's refusal to reduce offenses to misdemeanors, its prior imposition of upper terms, its comments related to the egregious way counts 2 and 3 were committed (especially balanced against its comment that count 1 was a "generic" commission of the offense), and its comment that the aggravating factors greatly outweigh the mitigating factor are insufficiently definitive to provide clear indication that it would have imposed the same sentence under the new standard. (See *Lynch*, at p. 777; *Salazar*, at p. 431.) For this separate reason, defendant's sentence must be vacated and the matter remanded for full resentencing.[5]

## II. Section 654

Defendant next contends that the trial court erred in failing to stay count 6, misdemeanor obstructing, resisting, or delaying a peace officer, since he committed that crime with the same objective as counts 2 and 3, driving in willful or wanton disregard for the safety of persons or property while fleeing a pursuing peace officer and evading a peace officer by driving on a highway in the opposite direction of traffic, respectively.

---

[5] " ' "The proper remedy for this type of failure of proof—where … [aggravating facts] were 'never tried' to the jury—is to remand and give the People an opportunity to retry" ' the aggravating facts." (*Lynch*, *supra*, 16 Cal.5th at p. 776.)

He argues that the criminal objective underlying counts 2, 3, and 6 was "escaping capture by the police."

The People disagree, contending that there is substantial evidence supporting the trial court's implied finding that the conduct at issue in count 6 was divisible in time from the conduct at issue in counts 2 and 3. We agree with the People. Substantial evidence supported the trial court's implied conclusion that defendant had an opportunity to reflect between the offenses.

### A.  Additional Background

At closing statements, the prosecutor described that most of the elements of counts 2 and 3 are identical, with the exception of the third element. The third element of count 2 required the jury to find that "[d]uring th[e] pursuit the defendant [d]rove with a willful and wanton disregard for the safety of persons or property or during the pursuit the defendant caused damage to … any property while driving." Whereas the third element of count 3 required the jury to find that "[d]uring the pursuit the defendant drove th[e] [truck] on the highway [or a street] in a direction opposite to the flow of traffic." She then explained how the evidence applied to those counts. She argued that defendant's conduct met the third element of counts 2 and 3 when he "drove over a sidewalk[,] [r]an a stop sign[,] multiple times drove the wrong way on several roads[,] drove and swerved on the shoulders of [a highway,] and crashed into a church fence."

The prosecutor described the elements of count 6 as follows:

> "Count 6, obstructing, delaying, resisting a peace officer. Again, sounds like [c]ount 2 and 3 but they're not the same. These are separate charges. Officers Patty and Brackett with BPD. They were peace officers lawfully performing or attempting to perform their duties as a peace officer. The defendant willfully resisted or delayed those officers in those attempted performance of that duty. When he acted, he knew or reasonably should have known that Officer Patty or Officer Brackett was a peace officer performing or attempting to perform his duties."

The prosecutor then described defendant's conduct that she contended constituted the violation on count 6: "He did not yield to th[e] traffic stops and then after he crashed through the fences and began doing donuts, the dirt became too much for Officer Brackett to see and he abandon[ed] the vehicle[,] fled and hid in the neighboring backyard."

At sentencing, defendant's counsel voiced an objection to running "the eight[-]month part of" count 2 consecutive to count 1. However, she voiced no similar objection to imposition of a concurrent term on count 6, rather than staying any sentence on that count pursuant to section 654.

### B. Relevant Legal Principles and Standard of Review

At the time of defendant's sentencing, section 654, subdivision (a) provided that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Effective January 1, 2022, Assembly Bill No. 518 (2021–2022 Reg. Sess.) modified section 654, subdivision (a), to permit an act or omission punishable under two or more provisions of law to "be punished under either of such provisions." (Stats. 2021, ch. 441, § 1.)

The inquiry to determine whether separate sentences can be imposed pursuant to section 654 is "[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19; *People v. Correa* (2012) 54 Cal.4th 331, 335–336.) That inquiry turns on "the intent and objective" of the defendant. (*Correa*, at p. 336.) " 'If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*Ibid*.) However, "multiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense created a new risk of

15.

harm. [Citations.] 'Separate sentencing is permitted for offenses that are divisible in time ….' " (*People v. Felix* (2001) 92 Cal.App.4th 905, 915.)

"The question of whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination." (*People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1113.) Where the trial court makes no express section 654 findings, we consider whether substantial evidence supports an implied finding of separate transactions. (See *People v. Islas* (2012) 210 Cal.App.4th 116, 129; *DeVaughn*, at p. 1113.) " ' "We must 'view the evidence in a light most favorable to the respondent and presume in support of the [sentencing] order the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]' [Citation.]" [Citation.]' " (*DeVaughn*, at p. 1113.)

### C. Analysis

The People argue that *People v. Fuentes* (2022) 78 Cal.App.5th 670 (*Fuentes*) is instructive. We agree.

In *Fuentes*, officers conducted a vehicle stop on a vehicle that they determined had been reported stolen. (*Fuentes*, *supra*, 78 Cal.App.5th at p. 674.) Defendant initially stopped the vehicle but drove away when the officers directed him to exit the vehicle. (*Ibid.*) The officers pursued the defendant as he "ran a stop sign, crossed over into oncoming traffic, and eventually crashed the front of the car into a brick wall." (*Ibid.*) The defendant then exited the vehicle and fled on foot. (*Ibid.*) One of the pursuing officers saw the defendant reach for something in his waistband and the officer deployed his taser. (*Ibid.*) The taser was ineffective and defendant continued to run. (*Ibid.*) The officer caught defendant, struck him on the head with the taser, punched him, and arrested him. (*Ibid.*)

The defendant in *Fuentes* was convicted of driving in willful or wanton disregard for the safety of persons or property while fleeing a pursuing peace officer (Veh. Code, § 2800.2) and obstructing, resisting, or delaying a peace officer (§ 148, subd. (a)(1))—the

16.

same offenses at issue here. (*Fuentes*, *supra*, 78 Cal.App.5th at p. 675.) The trial court in *Fuentes* then sentenced defendant to imprisonment on the Vehicle Code section 2800.2 count and a concurrent term of imprisonment on the section 148, subdivision (a)(1) count. (*Ibid.*) On appeal, the defendant presented the same argument defendant makes in this case: that the trial court erred in sentencing him to a concurrent term of imprisonment on the section 148, subdivision (a)(1) offense. The appellate court explained:

> "Multiple punishments for a single course of flight from an officer could, in some cases, be prohibited by section 654. We agree, however, with the People that substantial evidence supported the conclusion that [the defendant]'s flight by vehicle and flight on foot were not part of the same course of conduct. Although [the defendant's] goal was to flee the pursuing officers, his flight on foot after crashing into a wall carried with it a new risk of violence for [the defendant], the pursuing officers, as well as potential bystanders. As [the pursuing officer] testified, he believed [the defendant] might have been reaching for something in his waistband during the foot flight, and thus he struck [the defendant] when he caught up to him out of a concern for personal safety. (See also *People v. Hairston* (2009) 174 Cal.App.4th 231 [continued flight after encountering successive officers justified multiple punishment due to the risk of harm each encounter created]; *People v. Trotter* (1992) 7 Cal.App.4th 363, 368 [multiple punishment justified for successive shots fired because each shot could have put different people in danger].) Moreover, after crashing the car, there was time for [the defendant] to 'reflect and consider his next action.' (*Ibid.*) Absent a trial court objection, the People had no reason to offer additional evidence from the officers about why the flight on foot might warrant different punishment than the flight in a vehicle. On this record, there was substantial evidence for the trial court's implied finding that section 654 was inapplicable." (*Fuentes*, *supra*, 78 Cal.App.5th at pp. 680–681.)

Defendant argues that *Fuentes* is distinguishable because, in this case, defendant did not reach for his waistband or do anything that increased the risk of danger when he hid amongst nearby rubble.

We disagree with defendant that the trial court could not reasonably have concluded on the evidence before it that (1) defendant had separate objectives in fleeing

17.

Patty and Jordan until they lost sight of defendant, then Brackett until he lost sight of defendant, then the other officers who pursued him into the church parking lot until they lost sight of him; (2) defendant increased the danger to the officers when he fled on foot; and/or (3) that after abandoning the truck, there was time for defendant to reflect and consider his next action. First, each encounter between defendant fleeing in the truck and a peace officer pursuing defendant posed a risk to defendant, the officers, and the public. (*People v. Hairston*, *supra*, 174 Cal.App.4th at p. 240.) The record reflects that three sets of officers pursued defendant in his flight. Second, defendant's flight from officers in the truck was dangerous by nature of driving over a sidewalk, swerving between vehicles, driving against traffic, and doing donuts to kick up dirt and debris; defendant's flight on foot caused a separate delay and risk of harm to the public and officers pursuing defendant at night, on foot, through a residential neighborhood. Third and finally, as was the case in *Fuentes*, at the termination of the pursuit, there was time for defendant to " 'reflect and consider his next action.' " (*Fuentes*, *supra*, 78 Cal.App.5th at p. 681.)

In short, on this record there was substantial evidence in support of the trial court's finding that section 654 was inapplicable to count 6.[6]

## DISPOSITION

Defendant's sentence is vacated and the matter is remanded for full resentencing in conformity with section 1170, subdivision (b). The People may elect to retry the aggravating facts on remand. In all other respects, the sentence is affirmed.

---

[6] Our conclusion with respect to the applicability of section 654 as to count 6 does not preclude defendant from arguing on remand that the count should be stayed. We conclude only that the trial court's implied conclusion was supported by substantial evidence.